KENNEDY and others *vs*. WOOD & SMITH.

Where a *naturalized citizen* died in 1833, seised of real estate, the *title* to which he
acquired in 1824, under a *contract of purchase* made in 1810, of which real estate
he had been in possession ever since, and an action of ejectment was brought by
a brother and two sisters of the deceased who were *aliens at the time of his death*,
and who had not complied with the requirements of the act relative to aliens
passed in 1825 : IT WAS HELD that the plaintiffs *by reason of their alienage* were
incapable of inheriting the estate of their deceased brother, although they had
been *residents of this state since* 1805.
*It was further held*, that the plantiffs could not claim any thing under the *equitable
estate* in the premises existing in the deceased previous to his obtaining the legal
title ; the acts on this subject recognizing only *legal estates*.
Whatever rights the plaintiffs had (if any) under the acts of 1802 and 1808, were
destroyed by the act of 1825, which applies as well to *aliens* who had before its
passage come to reside here, as to those who should subsequently arrive.

THIS was an action of *ejectment*, tried at the Monroe circuit
in October, 1836, before the Hon. ADDISON GARDINER, then one
of the circuit judges.

The plaintiffs claimed to recover *three undivided fifths* of
about 49 acres of land, as heirs at law of *James Kennedy*, who
being an *alien* came to reside in this state in the year 1802.   In
1810 he entered into a contract with *Daniel Penfield* for the
purchase of the premises in question, Penfield then being the
owner of the same.   Penfield conveyed the premises subject to
the contract to *Henry Champion*, who on receiving the purchase
money, conveyed the premises in 1824, to Kennedy, who had
been in possession of the land since the making of the contract
in 1810, and remained in possession until his death which
happened in 1833.   Kennedy was *naturalized* in 1810.   He
died without issue, and without father or mother living; but he
left *three* brothers, *two* sisters and a *nephew* and *niece*, the chil-
dren of a brother who died in 1822.   This action is brought by
Alexander Kennedy, and by Jane Morrison and Betsey Sheldon,
a brother and sisters of James Kennedy, the person last seised ;

Jane and Betsey are married women, and their husbands join in the action. The plaintiffs being *aliens* came to reside in this state in 1805, and have continued here ever since. Alexande $^r$ was *naturalized* in 1834, after the death of James; the other plaintiffs have not been naturalized or taken any measures for that purpose. The jury under the charge of the judge found a verdict for the *plaintiffs* which the defendants move to set aside.

*C. A. Mann,* for the defendants.

*H. Denio,* for the plaintiffs.

*By the Court,* Cowen, J. If James Kennedy took as an alien under the act of 1808, 3 *R. S.* 344, 1*st ed.,* in connection with the act of March 26, 1802, *id. p.* 343, § 1, and the act of 1808 has continued unrepealed, in respect to these plaintiffs it is not denied that they are entitled to recover.

It is contended that the contract of purchase raised an equitable estate descendible, in 1810, (before the naturalization,) to which the subsequent deed of 1824 related. That is denied; but if the doctrine of relation might have availed, it is contended that the plaintiffs continuing aliens, they were not entitled to inherit without complying with the requisites of the statute of 1825. *Stat. Sess. of* 1825, *p.* 427, re-enacted, 1 *R. S.* 720, 1*st ed.*

By the act of March 6, 1802, 3 *R. S.* 1*st ed.,* 343, § 1, in connection with the continuing and enlarging act of April 8, 1808, *id.* 344, 5, aliens were enabled to purchase lands, and hold and transmit such lands to their alien heirs, provided they had respectively become inhabitants of this state previous to or at the close of the legislative session of the latter year. These acts continued in force until the act of April 21, 1825, and the corresponding provisions of the Revised Statutes, *Stat. Sess. of* 1825, *p.* 427, 1 *R. S.* 720, 1*st ed.,* which provided that no alien who *had become* or *should thereafter become an inhabitant,* should take or hold real estate unless he should first make a deposition, as required by

the act, that he was a resident, and intended always to reside in the United States, and to become a naturalized citizen, and had taken the incipient steps for naturalization. Subject to these provisions, the statute enacted that aliens *might take and hold* any real estate of any kind whatsoever to them, their heirs and assigns forever. The act of 1802, provided that *all purchases by aliens should be deemed valid to vest the estate to them granted.* This is the provision continued by the subsequent acts, within which every conventional *purchaser* must come. *James Kennedy* and the plaintiffs are within these statutes in respect to *inhabitancy;* but the former is without them in several other respects. *First,* the acts contemplate a purchase by *grant* or *transmission of title,* so as to create a legal estate, and not a mere executory contract to purchase, which creates at most, but an equitable estate. *Secondly,* if this were not so, he became a naturalized citizen in 1810, and, from that time, held as such, whatever his estate might be, whether equitable or legal. *Spratt's Lessee* v. *Spratt,* 1 *Pet.* 343. *Thirdly,* as a naturalized citizen, he, in 1824, took a deed from Champion, by which the former contract was satisfied and extinguished ; thus, he took and, at the time of his death, held a vested estate as a naturalized citizen. He took previous to the act of 1825, and held till his death in 1833, when clearly, if the plaintiffs were entitled to inherit at all, it was because they had complied with the conditions of the act of 1825, and the Revised Statutes. This is not pretended. They all continued mere alien residents, without either of them having ever made the deposition, or taken the incipient steps required by this act. They are disqualified by its very words ; and there is no color for the suggestion that they had acquired such vested rights under the former statutes as were intangible by the subsequent one. Certainly they had nothing more than a contingent right of descent, like a kinsman who might inherit at the common law. It was never doubted that the legislature had power to alter or abolish the law of descents, even the statute *de donis,* which has been repealed in this state, and I presume, by nearly every other

state in the union.   It was said by the counsel for the plaintiffs, that the statute of 1825 was not intended to affect aliens who had settled and continued here under the old statutes.   Looking at the whole of the act, I take the contrary to be quite clear.   The first section shows that the legislature had *former* as well as *future* residents in their minds.   They say any aliens *who have come*, &c., or *may hereafter come*, &c., may take, &c., provided that *no alien* shall be capable, &c. unless he shall first take the qualifying steps.   Then in subsequent sections certain duties are imposed on aliens *within the act*, and forfeitures provided, from which aliens who took under the former statutes were exempt. I have no doubt the statute intended to place all alien residents on the same footing, without any distinction arising from the time at which they immigrated and settled.   The re-enactment in the Revised Statutes is to the like effect.

The difficulty is, in short, not that James Kennedy, was incapable of taking and transmitting by descent, but that the plaintiffs were incapable of inheriting at the time of his death, by reason of having omitted to comply with the conditions imposed by the act of 1825.

A new trial must therefore be granted; the costs to abide the event.