James Heeney and Alicia C. Heeney *vs.* The Trustees and Associates of the Brooklyn Benevolent Society, and others.

Where, at the time of a descent cast by the death of an individual seised of land, his heirs at law are aliens, and by the common law incapable of inheriting or taking lands by descent, their subsequent naturalization will not have a retroactive effect, so as to vest in them a title to the lands of their ancestor.

Though an alien may take lands by *purchase,* and will hold them for the benefit of the state, by a title defeasible upon office found, yet no title or estate whatever, can pass to an alien *by operation of law.*

When the ancestor dies, the estate cannot be in abeyance ; and if the persons who would otherwise inherit are aliens, it passes by them, and not through them, and vests at once in the state.

The disability of aliens to take lands by descent is not removed by the statute of 1843. (*Laws of* 1843, *p.* 62, *ch.* 87.)

The meaning and effect of that act is not that every alien upon whom a descent was cast, either before or since the act, may, by becoming naturalized, at any time, take the real estate descended, as he would have done if he had been a citizen at the death of the person seised.

THIS was an action under the code, in the nature of an ejectment, to recover premises situated in Brooklyn. The plaintiffs claimed the premises as heirs, and the defendants claimed them as devisees of Cornelius Heeney, deceased. The action was tried at the Kings county circuit, in April, 1858. On the trial the plaintiffs gave in evidence exemplified copies of their naturalization papers, from which it appeared that on the 2d day of July, 1851, the plaintiff, Alicia C. Heeney, became and was duly naturalized and admitted to citizenship of the United States, in the court of common pleas for the city and county of New York, and that on the 21st day of December, 1840, the plaintiff, James Heeney, declared his intention to become a citizen of the United States, in the marine court of the said city of New York; and on the 6th day of November, 1848, was duly admitted to citizenship of the United States, in the superior court of the said city of New York. It was admitted by the counsel for the defendants that Cornelius Heeney died seised of the

premises in the complaint mentioned, on the second day of May, 1848, which he had purchased in the year 1806; that the said Cornelius was duly naturalized and admitted to citizenship of the United States in the year 1795. It was also admitted that said defendants were at all times, from the death of said Cornelius Heeney, and at the commencement of this suit, and at the time of said trial, in possession of the premises; and it appeared that the said Cornelius Heeney and the plaintiffs were natives of the United Kingdom of Great Britain and Ireland. The plaintiffs introduced evidence tending to prove that they, the plaintiffs, held such a relationship by consanguinity to the said Cornelius Heeney, that if not disqualified from inheriting or from recovering in this action by the fact of their alienism at the time of his death, they were the heirs at law and next of kin of the said Cornelius Heeney, deceased, and rested their case. Whereupon the counsel for the defendants moved to dismiss the complaint, on the ground that the plaintiffs were aliens at the date of the decease of the said Cornelius Heeney, which motion was opposed by the counsel for the plaintiffs, and thereupon the court did adjudge and determine that the action could not be maintained by the plaintiffs for the reason aforesaid, and dismissed the complaint; to which decision and judgment the plaintiffs excepted.

The following opinion was delivered by the justice at the circuit.

BROWN, J. "The plaintiffs claim as the heirs at law of Cornelius Heeney, to recover the possession of certain lands in the city of Brooklyn mentioned in the complaint, now in the possession of the defendants, and of which he died seised on the second of May, 1848. It appears from the evidence, that he emigrated to this country from Ireland some time during the latter half of the last century, and was naturalized as a citizen of the United States on the 14th of January, 1795. He acquired title to the lands in question in 1806.

The plaintiffs have given some evidence tending to show that they are his heirs at law, which the defendants propose to disprove if the case proceeds farther. Mr. Heeney left no children; and I shall assume, for the purposes of this decision, that the plaintiffs, if entitled to take by descent, are his heirs at law. They are both natives of Ireland, and came to New York in the year 1835, where they have since remained. James Heeney was naturalized as a citizen of the United States on the 21st of December, 1848—his declaration of intention having been filed December 20th, 1840; and the plaintiff, Alicia, also became a citizen of the United States on the 2d of July, 1851. At this stage of the proof, the plaintiffs rest, claiming the lands by descent, from Cornelius Heeney, who was a citizen at the time of his decease, they being aliens at the time. The defendants move for a nonsuit, upon the ground that the plaintiffs have shown no title; and I am to determine whether the common law disability to take lands by descent, which attaches to persons in the condition of the plaintiffs, is removed by any of the statutes to which they refer. It is not worth while to advert to the various acts which have been passed to enable persons of foreign birth to take and hold real property, nor to speak of the policy of the government to induce them to acquire lands and become citizens. It will be sufficient to consider very briefly some of the sections of the two statutes which the learned counsel think determine the question.

The fourth section of the act of April 18th, 1845, enables the heirs at law of a resident alien to take and hold his estate by descent, whether they be citizens or aliens, requiring such of them as are male aliens of full age to make and file with the secretary of state the deposition mentioned in the first section. This provision cannot aid the plaintiffs, because the person whose estate they claim was a citizen and not a resident alien. The 10th section of the same act provides for the discontinuance of proceedings against a resident alien to recover the possession of his lands by the people of the

state, upon filing the deposition mentioned in the first section, serving a copy upon the attorney general, and paying the costs of the action. The deposition referred to is an affidavit of residence and of an intention to become a citizen. I mention these two sections, because they were spoken of upon the argument. They are certainly indicative of the liberal and enlightened policy of the state, but they afford no guide to the result we are seeking.

Section 1st of the act of 10th of April, 1843, affords matter for more thoughtful examination. It is in these words : " Any naturalized citizen of the United States, who may have purchased and taken a conveyance for any lands or real estate, within the state, or to whom any such lands or real estate may have been devised, or to whom they would have descended if he had been a citizen at the time of the death of the person last seised, before he was qualified to hold them by existing laws, may continue to hold the same in like manner as if he had been a citizen at the time of such purchase, devise, or descent cast ; and all conveyances, by deed or mortgage, heretofore made by such naturalized citizen, are hereby confirmed."

It is claimed by the learned counsel for the plaintiffs, that these words apply to conveyances, descents cast, and devises of land generally, and without limitation as to time. It is doubtless true that the words of a statute should have a general application, unless they are words indicating a different intention. It is equally true, also, that all the words must have effect, if possible, otherwise the will of the lawgiver would not be observed. Now, should a prospective operation be given to the section quoted, so as to affect grants, devises and descents cast after the passage of the act, what are we to do with the words, "may have purchased and taken a conveyance," and the words, " to whom any lands may have been devised," and the words, " to whom they would have descended?" In its grammatical construction, this language has reference to time past, to events already consummated

and accomplished, and not to the time to come, and to events to be afterwards consummated and accomplished. These are certainly not the words usually employed in an act intended to have a general application, and to operate prospectively as well as retrospectively. We are bound to suppose that they were inserted in the section to effect some purpose and to express some intention ; and the purpose and intention could have been none other, I think, than to confirm grants, descents and devises which had already been made, and not those to be made thereafter. The concluding words of the section, declaring that conveyances "heretofore made by naturalized citizens, are hereby confirmed," corroborates and gives color to the construction claimed by the counsel for the defendants.

It will be useful to look at the second section of the same act, in this connection. It is in these words : "Any alien, who, being at the time an actual resident of the United States, may have heretofore purchased and taken a conveyance of any such lands or real estate, or to whom they may have been devised, or to whom they would have descended if he had been a citizen at the time of the death of the person last seised ; and any such alien who may hereafter purchase and take a conveyance of any such lands or real estate, or to whom the same may be devised, or to whom the same would descend if he were a citizen, and who have already filed, or shall within one year from the passage of this act, or within one year from the time of such purchase, devise, or descent cast, file the deposition or affirmation specified in the fifteenth section, article second, chapter first, part second of the revised statutes, may hold or convey such land or real estate during the term of five years from the passage of this act, in the same manner as if he were a citizen of this state. And any conveyances by deed or mortgage, heretofore made by any such alien, is hereby declared in like manner valid."

The first section, it will be observed, applies to naturalized citizens, and not to aliens ; and as I have before said, pro-

vides for past grants, devises and descents cast. The second section, on the other hand, applies to aliens, and not to naturalized citizens, and provides for grants, devises and descents cast, past as well as future, employing the words, "lands heretofore purchased and hereafter purchased," and the words, "to whom they may have been, or may be devised," and "to whom they have descended, or would descend," manifesting a very clear intention to distinguish between the past and the future, in respect to the subjects upon which the statute was to operate. If I am right in respect to this limitation of the first section, then it cannot operate to remove the common law disability which attaches to the plaintiffs, because the descent was not cast by Mr. Heeney's death until the 2d of May, 1848 ; nor can the second section have any effect, as no deposition was ever filed by the plaintiffs.

The plaintiffs have never been in possession of the estate, and this action is brought to put them in that position.

The learned counsel for the plaintiffs do not claim that they are entitled to the estate under the provisions of the second section, because they were clearly temporary ; and at the time of the descent cast, the plaintiffs were not naturalized citizens, and consequently did not come within the class of persons mentioned in the first section. Seven months expired after the death of Mr. Heeney before either of them became naturalized. Assuming that Cornelius Heeney died intestate—and no will has yet been produced—where was the title to these lands in the meantime ? It certainly was not in the plaintiffs. The estate could not have been vested in them, under the first section, because they were not naturalized citizens, and its language will be satisfied with nothing less. No one has said it was in abeyance. It must, therefore, I think, have been in the state. Its title did not depend upon an inquest of office, or on any other proceeding taken to assert its right, but upon the death of the person last

seised intestate, and without heirs at law, capable of taking by descent.

Upon the plaintiff's construction of the first section, no actual residence at the time of the descent cast is necessary, for none is required by the statute; so that if it prevails, a person of foreign birth, not a citizen, but a resident of his native country at the time of the descent ·cast, may emigrate to this state, and after the lapse of five years, qualify himself to take and hold an estate in land, which, in the meantime, has vested in the state for defect of heirs. The law provides ample means to enable this class of persons to acquire and hold real property. They may at any time make the deposition required by the fifteenth section of the act of 1830, and file the same with the secretary of state, and they will then become entitled to acquire and hold real property by grant, devise, or descent cast, until the period arrives when they may become citizens. (1 *R. S.* 720, § 15.)

I arrive at the conclusion, that the plaintiffs are not in a condition to assert a title to the estate of which Cornelius Heeney died seised, with some hesitation; but I see no alternative; and I think it better for all concerned that the principal· legal question should be definitely settled before proceeding to investigate further the pedigree of the plaintiffs, the capacity of Mr. Heeney to make a valid will, or the influences under which it may have been executed.

The motion for a nonsuit is granted, with a stay of proceedings, to enable the plaintiffs to make a case or bill of exceptions; and I will order the exceptions to be heard at general term, in the first instance."

From this judgment the plaintiffs appealed.

*E. W. Stoughton* and *J. Van Buren*, for the appellants.

*T. J. Glover* and *C. O'Conor*, for the respondents.

*By the Court,* EMOTT, J. The disposition which was made at the circuit of the challenges to jurors is immaterial, if the nonsuit was properly granted. It will not therefore be necessary to consider the challenges until it is determined that the plaintiffs had a right to go to the jury.

Cornelius Heeney was naturalized in 1795, purchased the premises in dispute in 1806, and died seised in May, 1848. The plaintiffs gave evidence to show that they were, and for the purpose of the present argument they are to be taken to be, his heirs at law, if they are qualified to inherit. James Heeney, one of the plaintiffs, made the declaration of his intention to become a citizen which is required by the naturalization laws, on the 21st day of February, 1840, and was naturalized on the 6th of November, 1848. Alicia C. Heeney, the other plaintiff, was naturalized July 2d, 1851. At the time of the descent cast by the death of Cornelius Heeney both the plaintiffs, therefore, were aliens, and by the common law incapable of inheriting or taking lands by descent. It is contended that their subsequent naturalization had a retroactive effect, and vested in them as perfect a title to the lands of their ancestor, as if they had been citizens at the time of his death.

The answer to this argument is obvious. The plaintiffs took no title at the death of Cornelius Heeney, unless they are aided by the statutes, which I will consider presently; and thus there was no estate in them which their subsequent naturalization could confirm. Naturalization, as Judge Bronson observed, in the *People* v. *Conklin,* (2 *Hill,* 67, 70,) though it may confirm a defective title, will not confer an estate. An alien may take lands by purchase, and he will hold for the benefit of the state by a title defeasible upon office found, or other mode of asserting the escheat. (1 *Cruise,* 145, § 27.) But he is wholly incapable of taking by descent, and acquires no title by a descent cast during his alienage. In the former case a release of the escheat may confirm the title, and there are cases where it has been held that naturalization will in

like manner have a retroactive operation upon the defective title acquired by the alien's purchase, if he be naturalized before office found. The cases cited by the counsel, *Jackson* v. *Green,* (7 *Wend.* 333;) *Jackson* v. *Beach,* (1 *John. Cas.* 399,) and *Kennedy* v. *Wood,* (20 *Wend.* 232,) will be found to be cases of this description. The observations of the judges upon the retroactive effect of naturalization refer to titles acquired by purchase, and the principle will be found well stated in some of these cases, that no title or estate whatever can pass to an alien by operation of law. When the ancestor dies, the estate cannot be in abeyance, and if the persons who would otherwise inherit are aliens, it passes by them and not through them, and vests at once in the state. Even the statutes which permit descent to be traced through an alien ancestor to relatives who are capable of inheriting, only apply to the case of dead and not to living ancestors, and do not recognize or allow any title to pass through, and still less to vest in, an alien by act of law. (*See* 21 *Wend.* 130.) It is otherwise with a title by purchase, where the grantor voluntarily parts with his estate and a title passes, defeasible at the pleasure of the state indeed, but still a title which may be confirmed, and. made perfect in the purchaser.

It remains to consider whether the statute of 1843, (*Laws of* 1843, *p.* 62, *ch.* 87,) which was cited by the counsel for the plaintiffs, will reach their case. The first section of that act, so much of it as could refer to such a case as that before us, is as follows : " Any naturalized citizen of the United States, to whom any lands or real estate would have descended if he had been a citizen at the time of the death of the person last seised before he was qualified to hold them by existing laws, may continue to hold the same in like manner as if he had been a citizen at the time of such descent cast ; and all conveyances heretofore made by such naturalized citizen are hereby confirmed." The argument for the plaintiffs is, that the section is to be construed as general and prospective in its operation, and as establishing a rule for all cases. The

meaning and effect of the act is said to be that every alien upon whom a descent was cast either before or since the act, may by becoming naturalized at any time take the real estate descended, as he would have done if he had been a citizen at the death of the person seised. The act contains a saving clause which would protect persons in whom any right or title may have vested from the consequences of a provision so sweeping as this, upon such a construction; but still it is obvious that if this section of the act is general and prospective, it is a radical change of the policy and frame of our laws upon this subject.

We are of opinion that the construction given to this section by the judge at circuit was correct, and that the plaintiffs are mistaken in their interpretation. It is true that the language "would have descended" and "may continue to hold" is susceptible of a general and prospective construction. But it does not necessarily require such a construction, and in this case it could not be justified. The persons to whom the section refers are not aliens who may become naturalized citizens, and who are referred to by the residue of the act, but those who were already naturalized. The first two sections of the act relate to two different classes of persons, the first section to naturalized citizens, and the second to aliens. These classes of persons respectively are spoken of as being such at the passage of the act, and it would be singular if aliens, who are authorized, according to the second section, to take lands upon certain conditions, and by becoming naturalized, could by the mere act of naturalization place themselves within the class contemplated by the first section, and at once obtain privileges of a much more extended and sweeping character. The provisions of the second section of the act forbid such a construction. This section authorizes any alien to whom lands would have descended if he had been a citizen, that is by a descent cast before the act, or to whom they should thereafter descend if he were a citizen, that is, by a descent after the act, by filing the deposition required

by § 15, art. 2, ch. 1, part 2 of the revised statutes, within one year after the act, if the descent had already taken place, or within one year after the descent cast, in cases of future descents, to take lands as if he were a citizen. It will be noted that this part of the statute is temporary, and limited to five years from its passage. If every alien, by becoming naturalized at any time after the act, brought himself within the scope of the first section, and if that section was intended to be general, prospective, unlimited in time and absolute, the provisions and conditions of the second section were nugatory and useless. The second section carefully provides for every case of a descent cast upon an alien in the past or future. And it may be observed that it does so in terms which indicate precisely that both the past and the future are included. It would reach the present case if the plaintiffs had brought themselves within its terms by complying with its conditions. The privileges conferred by this section are not only conditional, but as has been already observed they are limited to those who become entitled to them, and availed themselves of them within a definite period. The inference from the fact that such limited and restricted provisions are contained in the same statute with those which are now in question is irresistible, that the latter clauses of the act were intended for persons and cases not within the provision of its section—an inference which is fatal to the plaintiff's theory. This train of reasoning, which might be pursued to much greater length, is equally conclusive with the grammatical construction of the section in question, which is adverted to in the opinion delivered at the trial, and which also is strongly against the plaintiffs. It is true that the construction of a statute is not to be merely grammatical. But the light and aid which is furnished in this case by other acts in *pari materia*, and most distinctly by the residue of the very act in question, sanction and sustain the literal and grammatical sense of the words.

Heeney *v.* Trustees of Brooklyn Benevolent Society:

We were referred to the construction put by the supreme court of the United States, in *Beard* v. *Rowan,* (9 *Pet.* 301, 316,) upon a statute of Kentucky, which it is said is analogous to the one before us. The truth is, there is no such analogy. The Kentucky statute had a preamble, that whereas by the law then in force aliens could not hold lands in the state, and it was considered for the interest of the state that such prohibitions should be done away, therefore it was enacted &c. The court could not avoid seeing the obvious intention of the legislature to abolish all disabilities of aliens, and that intention controlled the construction of the act. The act itself seems to have had but one section, which was to this effect, that any alien who shall have resided two years in the state, shall during the continuance of his residence after that period, be enabled to hold, receive and pass title to lands as citizens might do. This phraseology is susceptible of a construction which would apply it to future as well as past cases, without violence. There were no provisions in the residue of the act, such as there are here, in conflict with such an intention, and nothing in any other legislation of the state, inconsistent with the construction pointed out by the preamble. The Kentucky statute speaks of *aliens,* and not of naturalized citizens, and is thus relieved from another difficulty, which alone would be insuperable, in the way of such a construction of the present act. In short, the cases are wholly unlike, and the reasoning of the supreme court of the United States in the case referred to, strengthens the conclusions at which we have arrived in the case at bar.

The defendants must have judgment upon the nonsuit, with costs.(*a*)

[Kings General Term, February 11, 1861. *Emott, Brown* and *Scrugham,* Justices.]

(*a*) The point decided in the above case arose in *Smith* v. *Smith and others,* in the city court of Brooklyn, before Judge Greenwood, in 1850. That was an action for partition. On deciding it, the city judge delivered the following opinion.

Heeney *v.* Trustees of Brooklyn Benevolent Society.

GREENWOOD, City Judge. (After discussing the question whether the Rev. John N. Smith, deceased, who was formerly the owner of the premises of which partition was sought, was a naturalized citizen of the United States, and coming to the conclusion that he was.) " The Rev. John N. Smith died in this state in February, 1848. He had no issue, but left him surviving three brothers, the plaintiffs and the defendant Peter Smith, who were naturalized citizens at the time of his death, and two sisters, the defendants Jane McDermott and Alice Colton. Alice Colton was an alien, and died in February, 1848, nine days after the intestate, John N. Smith, leaving John Colton, Patrick S. Colton, Catharine and May, her surviving children. Jane McDermott was naturalized on the 13th November, 1849. On the death of John N. Smith his estate descended to his heirs at law. Alice Colton having been an alien at the time of his death, could not inherit. But with regard to Jane McDermott, it is supposed by her counsel that the 22d section of art. 2, ch. 1, part 2 of the revised statutes, (2 *R. S. ed. of* 1836, *p.* 5, § 1, *ch.* 87, *act of* 1843,) operates so as to make her naturalization relate back to the time of the death of John N. Smith. I think not. This act was passed in 1843, and so far as this section is concerned is retrospective in its nature. It is intended for the relief of persons theretofore naturalized who may have purchased lands, or to whom they may have been devised or would have descended if naturalized at the time of the descent cast. This is obvious from the whole tenor of the section. It includes only naturalized citizens "who may have purchased and taken a conveyance of lands, or to whom they may have been devised, or to whom they would have descended if they had been citizens," and provides that they "may continue to hold" &c. and confirms "all conveyances by deed or mortgage theretofore made by such naturalized citizens." This construction is confirmed by a reference to the language of the next section, in which both retrospective and prospective words are used, and which gives to resident aliens who have taken, or may within a year from the passage of that act, or from the time of purchase, devise or descent cast, take incipient measures to obtain naturalization, the right to hold or convey lands, for five years from the passage of said act, this being the probationary term of residence required by law to enable aliens to become citizens. If the 22d section before referred to, (§ 1 *act of* 1843,) were not merely retrospective, it would be difficult to fix a limit to its prospective operation. If an alien may wait twenty-one months, as in this case, after the death of the person from whom he claims to inherit, before he becomes naturalized, why may he not wait any length of time short of that when he would be barred by adverse possession?" If such a doctrine could be sustained, it would lead to great uncertainty and confusion in titles, and greatly embarrass the transfer and improvement of real estate. Indeed it would uproot all the well settled principles of law in relation to the descent of property. The fee would either be left floating at large, or if vested, be liable to be divested upon the choice, which might or might not be made, of a party to become naturalized at some indefinite time.

The legislature must have had this in view in providing, as they did, by the

24th section of the same statute, (2 *R. S. p.* 5, § 3 *of act of* 1843,) that the said act shall not affect the rights of the state, or any case in which proceedings for escheat have been instituted: "nor the rights of any person or persons whose interests may *have become vested* in any such lands or real estate."

The interest of those who were capable of taking as heirs of John N. Smith became vested on his death, for the fee was never in abeyance, and the subsequent naturalization of Mrs. McDermott could not therefore divest them.

The children of Mrs. Colton cannot take, for she was an alien and living at the time of the death of John N. Smith; and in such a case the statute (2 *R. S. ed.* 1836, *p.* 38, § 22,) which provides that no person capable of inheriting shall be precluded by reason of the alienism of any ancestor of such person, does not apply. (*People* v. *Irvin*, 21 *Wend.* 128.)

Mrs. Colton having been incapable of taking, and the lands having descended to other persons on the death of John N. Smith, her children can take no interest in them.

The consequence is that partition of the premises must be made between the three brothers only, who were the sole persons capable of inheriting as heirs of John N. Smith."