JAMES HENEY AND ALICIA HENEY, APPELLANTS, *v.* THE TRUSTEES, &c., OF THE BROOKLYN BENEVOLENT SOCIETY AND OTHERS, RESPONDENTS.

*Naturalization—Retroactive Operation—Construction of Statutes.*

NATURALIZATION, by virtue of the laws of the United States, has no retroactive operation to vest or confirm in the subject the title to lands which, by reason of his alienage, he could not inherit at the time of the death of the ancestor.

C. H. died May 2, 1848, seized of lands in this State. The Plaintiffs, who proved such relationship to the deceased as would entitle them to inherit, if not disqualified, were then in this country. One had declared his intention to become a citizen. AFTER the death of C. H. both were naturalized. In an action of ejectment to recover possession of such lands, *Held*, that upon the foregoing facts they were not entitled to recover, and were properly nonsuited.

The statute passed April 10, 1843, section 1, authorizing a naturalized citizen, to whom lands would have descended if he had been a citizen at the time of the death of the person last seized, to continue to hold the same in like manner as if he had been a citizen at the time of such descent cast, applied only to those who were then naturalized citizens.

APPEAL from judgment for the Defendants, dismissing the Plaintiffs' complaint, entered at the General Term of the Supreme Court, in the Second District; exceptions having been taken at the trial and ordered to be heard in General Term, and judgment in the meantime suspended.

The action is brought for the recovery of the possession of real estate in Kings county, of which it was admitted on trial Cornelius Heney died seized, on the 2d day of May, 1848, and of which the Defendants are in possession.

The complaint alleged that at the death of Cornelius Heney, the Plaintiffs and Christopher Heney were his only next of kin and heirs-at-law surviving, and as such then became seized of an estate of inheritance in fee-simple of and in the premises, and that Christopher Heney died in 1853, and by his last will devised the

premises to the Plaintiffs, who are also his only next of kin and heirs-at-law.

The answer of the Defendants denies the seizure of the Plaintiffs, denies that they are the next of kin or heirs-at-law of Cornelius Heney, and avers the making of a will by the latter, and a devise of the premises, to the Defendants, who are a corporation, &c.

On the trial, the seizure of Cornelius Heney, who purchased in 1806, and his death, May 2, 1848, were admitted, and also that the Defendants had been at all times from the death of Cornelius Heney, and were still, in the possession of the premises.

It also appeared that the said Cornelius Heney and the Plaintiffs were natives of Great Britain and Ireland. That the said Cornelius was duly naturalized, and became a citizen of the United States in the year 1795. That on the 21st day of December, 1840, the Plaintiff, James Heney, declared his intention to become a citizen, and on the 6th day of November, 1848, he was duly naturalized. That on the 2d day of July, 1851, the Plaintiff, Alicia Heney, was duly naturalized.

The Plaintiffs gave evidence tending to prove that the Plaintiffs bore such a relationship by consanguinity to the said Cornelius Heney, that if not disqualified from inheriting, or from recovering in this action by reason of their alienism, at the time of his death they were the heirs-at-law and next of kin of Cornelius Heney, deceased, and rested.

The Defendants thereupon moved to dismiss the complaint, on the ground that the Plaintiffs were aliens at the time of the death of the said Cornelius. The motion was granted.

The exceptions were ordered to be heard at the General Term, in the first instance, and at General Term a judgment for the Defendants was rendered.

The Plaintiffs appealed to this Court.

*E. W. Stoughton* and *William C. Barrett* for Appellants.
*Chas. O'Conor* and *T. J. Glover* for Defendants.

Woodruff, J.—At the time of the death of Cornelius Heney,

who died seized of the premises in question, the Plaintiffs were aliens.   It is not claimed that as such they could inherit and hold lands in this State.

The claim of the Appellants is, that having become naturalized citizens of the United States after the decease of the said Cornelius, they became entitled to take and hold the real estate whereof he died seized.

This is claimed upon two grounds, viz. :

*First,* That upon general principles naturalization has a retroactive operation, which, vested or confirmed in them the estate which, but for their alienism, would have descended to them in fee, at the death of Cornelius Heney, had they then been citizens of the United States.

*Second,* That the statute of this State, passed April 10, 1843, entitled " An Act to enable resident aliens to hold and convey real estate " (Laws of 1843, Ch. 87), entitled them to take and hold the land as heirs-at-law of the person last seized.

The first point involves this general result, viz. : that whenever the owner of real estate dies without heirs capable of inheriting, the State holds the title by escheat, subject to the contingency that at some future day, some person or persons, now aliens, but otherwise entitled to inherit, may come to this country, and by becoming naturalized, divest the title of the State.

Certainly, there is no common law, rule or authority, for such a proposition ; for naturalization is not of the common law.   The English law-writers who speak of the retroactive effect of naturalization, therefore, speak of the express or constructive effect of the Acts of Parliament, by which, in special cases, the disability of alienism is removed, in terms which are deemed to involve the installation of the subject in the same condition in the eye of the law, as if he were native born.

It is clear, I think, that we are to seek for the legal effect of naturalization in the statutes by which it is authorized, and in such legislation as has been had in our own State on the subject. It is not to be determined upon a mere definition of the term naturalization, but if it were, it would be most logical, and most

consistent with sound principle to say, that the subject, when naturalized, began to have capacities pertaining to citizenship available for the future, and only in such future.

If it were conceded that the Congress of the United States have power to declare the effect of naturalization, so as to give to the subject thereof all the rights, retroactively as well as prospectively, which he would have, or would have had, if native born, of which, in respect to real estate, within the State, the transfer, transmission and descent of which is peculiarly a matter of State policy, there is great room for doubt, I think it clear that the naturalization laws of the United States admit of no such construction.

Under those laws the applicant is admitted to citizenship upon complying with certain prescribed conditions. He "becomes" a citizen. He is put in a condition, or acquires a character, in which he can have and enjoy all the rights and privileges which by law pertain to citizenship, and that is all. But all this is, according to the plain reading of the laws, prospective. His capacity then begins to be useful or efficient to enable him to have and enjoy whatever pertains to his new character.

This view of the subject is well illustrated and explained by the Chancellor and by Senator Verplanck, in Priest v. Cummings (20 Wend. 338), with whom I fully concur on the point.

Whatever rights aliens have, or may acquire, in real estate within our State, therefore, depends upon our own legislation, and not upon any idea that naturalization operates, per se, to give the rights of a native born citizen by relation back to the birth of a subject.

Indeed, the case which I have referred to above (20 Wend. 338), in the Court of Errors, seems to me in principle to settle the question. There, a naturalized widow claimed dower in lands held by her husband during coverture, but disposed of before her naturalization, and claimed for her naturalization a retroactive operation. There, it is true, the rights of a grantee of her husband may be said to have intervened; but the opinions of the Court do not rest the case upon the past, nor do I think it could have, in sound prin-

ciple, been made to turn upon that circumstance. It is placed upon the broad ground, that neither by force of the naturalization laws, nor by our statute of 1802, had her naturalization any retroactive operation. She, not having at any time while her husband was seized, capacity to take, had no inchoate right of dower, and naturalization did not retroact to work such a result.

Naturalization extinguishes the original disability, or it does not. . If it does, the Courts cannot assume to restrain its operation. And the fact that the lands have in the meantime been conveyed to a third person, would only lead to this. If subsequent naturalization retroacts so as to invest the subject with such rights as he or she would have if native born, the purchaser takes subject to that contingency. And there is no warrant for the assumption that the title of the State by escheat can be divested by subsequent naturalization of an alien heir or widow, unless it is found in our own statutes on the subject.

The case of Kennedy *v.* Wood, in the Supreme Court (20 Wend. 230), is at war with the idea so earnestly and ingeniously pressed by the counsel for the Appellant. There the Plaintiffs claimed to recover as heirs-at-law (a brother and two sisters) of James Kennedy, deceased. One of the Plaintiffs, the brother, was naturalized in 1834, but after the death of James Kennedy, who died in 1833. They were held not entitled to recover, because incapable of inheriting at the time of such death.

The various statutes of this State, heretofore passed, are reviewed, and no ground was found for sustaining their claim, though the Plaintiffs had been residents since 1805. And it was not suggested that the naturalization of the brother (Alex. Kennedy), after the death of James, placed him, in this respect, in any better situation than his sisters.

These cases show that the opinion of the Court in The People *v.* Conklin (2 Hill, 67), is not, in reference to the point under consideration, to be regarded as a dictum unsustained by authority. It is there held that the capacity to take by descent must exist at the time the descent happens. It is there conceded that an alien may take by purchase, subject to the right of the State to

recover the land after office found, and that if naturalization be had before office found, his title will be thereby confirmed. That a conveyance or devise should be deemed to operate technically as a transfer of the title to the alien, is in harmony with the fact that the State, seeking to avail itself of the escheat, must itself rely upon the conveyance or devise as a transfer of the title; and if, therefore, the grantee or devisee be naturalized before office found, it may be true that because he is then capable of holding the title so conveyed, and he cannot therefore be found an alien, the State cannot therefore enforce the escheat.

In this way the naturalization may, in a loose sense, be said to confirm his title. But this reasoning can have no application to a descent which is by operation of law. The law casts no title on an alien, and there is no need of a finding by inquisition of office to entitle the State to recover. Hence it is also said in the case last cited, that the rule is "otherwise where the party claims by descent" to be naturalized after descent cast. (See also Jackson v. Green, 7 Wend. 333.)

It is not quite easy to perceive how the argument for the Appellant can be reconciled with the express provisions of the Act of 1825 (re-enacted, see Part II., Chap. I., Tit. I., Art. II., R. S.),which, after providing that an alien, who had or may come into the State, may make and file a deposition or affirmation that he is a resident, intends always to reside in the United States, and become a citizen as soon as he can be naturalized, and that he has taken the incipient measures (in declaring his intention) as the laws of the United States require, &c.,may take and hold, and sell lands, &c., for six years, declares that "such alien shall not be capable of taking or holding any lands or real estate which may have descended .... to him previously to his having become such resident and made such deposition or affirmation as aforesaid." There is no pretence that the Plaintiffs have filed such a deposition or affirmation, and they were aliens when the lands descended.

It follows, that unless some statute of this State entitles the Plaintiff to recover, the judgment for the Defendants was not erroneous   The statute relied upon is that of April 10, 1843 (Chap.

87, Laws of 1843), as above stated, and the section on which the Plaintiffs rely is the first, which reads as follows: "§ 1. Any naturalized citizen of the United States who may have purchased and taken a conveyance for any lands, or real estate, within this State, or to whom any such lands or real estate may have been devised, or to whom they would have descended if he had been a citizen at the time of the death of the person last seized, before he was qualified to hold them by existing laws, may continue to hold the same in like manner as if he had been a citizen at the time of such purchase, devise, or descent cast; and all conveyances, by deed or mortgage, heretofore made by such naturalized citizen are hereby confirmed."

Before considering the construction of this section, it is quite pertinent to observe, under the previous point above discussed, that if the claim of the Appellants was correct, this statute was idle and unnecessary. For if naturalization, per se, retroacted, and vested or confirmed title in the person naturalized whenever a conveyance or devise had theretofore been made to him, or descent been cast which would entitle him, if a citizen, it was quite superfluous for the Legislature to enact that he might continue to hold, &c.

To recur to the actual operation of the statute itself. In the first place, every word of the section speaks of the past, and not of the future. It describes a naturalized citizen "who may have purchased," to "whom real estate may have been devised," to whom lands "would have descended if he had been a citizen at the time of the death of the person last seized," and this as having happened "before he was qualified to hold by existing laws," thus assuming that he is now, at the time when the Legislature speaks, qualified by naturalization.

Why should these terms, indicating sole reference to what has already happened, have been so carefully related, if the future was also contemplated? In giving its construction, we may not overlook the ease with which both past and future cases might have been provided for, if so intended. Thus, "who may have purchased, or who shall hereafter purchase, or to whom lands have been or

shall be devised, or to whom lands would have descended or would descend if he had been, or were, a citizen, &c., before he was, or shall be naturalized," &c. The concluding sentence makes it most clear that the Legislature had the past, and not the future, in view. Conveyances by the persons therein described, "heretofore made, are hereby confirmed."

The reading of the section seems to me quite too plain to be called in question. As pertinently stated by both Judge Brown and Judge Emott in the opinions below, the persons spoken of are not those who may thereafter be, or become naturalized citizens, but those who then were naturalized. The evil consequences of the construction contended for, to let in after any lapse of time from the death of the person seized, any person coming and obtaining naturalization, forbids the construction contended for.

Liberal as the State has uniformly been in waiving of its claim to escheat in favor of resident aliens who become citizens, or even avow their intention to become citizens, under such forms as seemed expedient, it has always been the policy of the State to hold the subject in its own control. When it sees fit to grant to, or confirm titles in immigrant citizens, it has done so in view of then existing facts and circumstances, involving no such uncertainty or looseness in the titles to real estate, as to have it unknown through the lapse of indefinite years whether persons born in other countries will or will not inherit.

But still more conclusively, I think, the reading of the whole statute shows that the Legislature, in the first section, referred to persons then actually naturalized.

The first section speaks entirely of " any naturalized citizen who may have purchased," &c., " to whom lands would have descended," &c. The second section declares that " any alien who being at the time an actual resident of the United States, who may have heretofore purchased and taken a conveyance," &c., or " to whom they may have been devised, or to whom they would have descended," &c., and, " any such alien who may hereafter purchase," &c., "or to whom the same may be devised, or to whom the same

would descend," &c., "and who have already filed, or shall within *one year* from the passage of this act, or within one year from the time of such purchase, devise, or descent cast, file the deposition or affirmation" required in a former statute, "may hold or convey such lands or real estate during the term of five years from the passage of this act," &c.

Now it is plain from this that the Legislature meant to provide for two classes, viz., those who were already naturalized, and those who were then aliens; and yet if the first section applied to persons then aliens, but thereafter to be naturalized, the second section was hardly necessary.

But it shows very clearly that in passing the act the Legislature used all the words not only intelligently, but with discrimination between the past and the future. And when they intended to provide for the future, they did employ future terms, leaving nothing to construction. And they preserved as theretofore their policy of retaining in their own control the circumstances of the future by making this statute, in so far as it was applied to claims, or devises, or to purchases or descents thereafter made or occurring, a temporary one, operating for five years from its passage.

The Plaintiffs can gain no strength from this act. They were not naturalized citizens when the act was passed. The descent had not been cast at the date of the act. They were then aliens, but never complied with the provisions of the second section.

The judgment of the Supreme Court must, I think, be affirmed. Affirmed.

JOEL TIFFANY,
State Reporter.