By the Court.—Vah Vorst, J.
The contract in this case was executory, and, under the evidence, the question arises whether it became completely executed on the part of the vendors, so as to enable them to maintain an action for the price of the goods agreed to be sold and delivered to the defendants.
What was sold by the contract of February 10,1872, was the balance of the jute butts shipped for the account of the plaintiffs, the vendors, per ships Nagpore and Jaypore, from Calcutta, not exceeding two thousand bales, and less the damaged bales out of the lot of four thousand. The sale was intended to cover the lot purchased for shipment by these vessels, as advised by cable. The terms were three and seven-sixteenth cents per pound actual gross weight, as landed alongside ship in New York or Brooklyn, gold; cash in thirty days from average delivery from each vessel; duty paid. The buyer was to have the benefit of'any reduction of duty, and to pay any increase of same. The merchandise was to be of good merchantable quality. Under this contract the vendees could not have been obliged to accept butts shipped for the account of others than the plaintiffs (Hayward v. Scongall, 2 Camp. 56; Yernede v. Weber, 1 Hurl. & N. 311). Nor were the vendees obliged to take, in any event, more than two thousand bales, and were entitled to have deducted from that amount the damaged bales out of the entire lot shipped for plaintiffs’ account on the two vessels. The entire lot shipped was believed to be four thousand bales on the two vesséls. Nor could the plaintiffs well insist, that the defendants should receive any butts under the contract, other than those shipped on the vessels named—and those of a good *383 merchantable quality, upon which the duty was paid. These are severally substantial parts of the contract, and as far as they act upon and obligate the plaintiffs, are conditions precedent, to be performed by them in addition to the making of a proper delivery or tender, before they could successfully maintain an action for the price of the merchandise in question. In this view the contract is entire. The principles out of which the above statements arise are elementary.
All the conditions precedent to be performed by the plaintiffs should be met and observed by them, before they could enforce by action the contract against, the defendants (Smith v. Brady, 17 N. Y. 173 ; Guidet v. Mayor of New York, 36 Sup'r Ct. [4 J. & S.] 557).
But the performance of conditions precedent may be excused on proper grounds, or may be waived, if there be in other respects a faithful observance of the contract by the contracting party (Moses v. Bierling, 31 N. Y. 464; Johnson v Oppenheimer, 55 N. Y. 291). The butts for the price of which this action is brought, as the evidence discloses, were imported from Calcutta for the account of the plaintiffs, who were the owners, and entitled to the control and disposal of the same.
The fact that some of the bales had upon them the mark “ W,” and that Finlay & Schlicter had advanced, in Calcutta, funds or credits to enable plaintiffs to pay' for them, does not affect the principal fact, that they were imported for plaintiffs’ account.
These butts were shipped upon, and were taken for delivery from the Jaypore, one of the vessels named in the contract, and were a portion of those purchased for shipment, and shipped on the two vessels for plaintiffs’ account.
We do not. think it incumbent, under the evidence, to construe the contract, so as to determine whether or not the defendants could have properly insisted that no delivery or 'tender could be made under the contract *384 until both vessels had arrived, and the damaged bales,. if any, should have been separated from the entire lot of both shipments. But it is to be observed that the-cargo of the Nagpore consisted of two thousand bales, only, and that the two thousand bales previously sold to. other parties, might, by the terms of those sales,' all be' taken .from the cargo of that vessel, which would exhaust it completely. We are, however, of opinion that the parties have themselves, by their words and acts, put a construction upon the contract in question in this, regard, and to the effect that the contract with the defendants might be satisfied out of the cargo of the Jay-pore exclusively.
The Jay pore arrived in New York on June 19. TheNagpore did not arrive until the 26th of .the same month.
On the day of the arrival of the Jay pore, the defendants were advised of the fact by the brokers who had effected the sale.
She had on board upwards of four thousand sound bales. In any event a quantity more than sufficient to> satisfy the number called for by the defendants’ contract.
When advised of the arrival of this vessel, defendants stated that they wished their bales put in bond.
On June 22, orders in writing were given to the defendants for the delivery to them of two thousand bales out of the Jay pore. In addition to the order in writing that these two thousand bales were to come from the Jay pore, defendants were verbally informed of the same fact, and no objection was made to a delivery of the entire quantity from that vessel.
If the contract was entire, so that the same could be legally satisfied only out of the cargoes of both vessels, although one contained a sufficient number to answer completely its demands, yet the parties could make it divisible by their consent or acts.
Where a. contract for the delivery of two boat *385 loads of wheat was entire in form, it was made divisible in its execution by the concurrence of the parties (Winne v. McDonald, 39 N. Y. 333; Tipton v. Feitner, 20 Id. 423).
We are of opinion that the evidence is sufficient to-establish the concurrence of the parties after the Jay-pore arrived, that the two thousand bales called for by the contract should be taken from her cargo exclusively.
The evidence also shows that those bales were-merchantable, and of a superior quality, and that the examination made to ascertain the quality, was sufficient to establish these facts.
The above considerations all bear upon the question &s to whether there has been a sufficient delivery or tender of the merchandise under the contract, to which we will more specifically advert.
There was no specific place in the city of New York, designated for the delivery of the bales, unless it be by the words “ three and seven-sixteenths cents per pound,, actual gross weight, as landed alongside in New York or Brooklyn.”
But even though a specific place “ alongside" was designated, the parties could agree that the merchandise might be delivered and received at another place. The order of J une 22 would have enabled the defendants to have taken the merchandise from alongside the ship, but not without the payment of the duties after-the goods had been weighed.
Such order, without an agreement in respect to-duties, other than the terms of the written contract, would not constitute a good delivery.
But the plaintiffs do not rely on this order alone.
The evidence is undisputed that the defendants said to the brokers, when advised of the arrival of the Jay-pore, that they wished their butts put in bond. They wished such disposition made in order to obtain the- *386 advantage of the reduction of duties, as provided for in the contract, which was to take effect under the act of congress, on August 1.
This was a direction from the defendants to the brokers to put the two thousand bales from the Jaypore in bond for them, and was also a waiver of the actual payment of the duties by the plaintiffs, as a condition precedent to their right to demand the payment for the merchandise, after the same should have been placed in bond, in pursuance of such directions. For the sole ■object of putting the bales in bond was to give the defendants the advantage of the reduction of duties, which could be effectually realized only by postponing their payment until after August 1.
In the meantime, by deducting from the price of the merchandise the duties existing at the time of the placing the same in bond, the plaintiffs gave the defendants the benefit of such reduction, as after August 1, if not removed from bond before, the defendants would be obliged to pay duties only according to the reduced scale. The weigher’s returns informed defendants of the weight of the bales.
The store receipts passed the property to the defendants. These documents, with an invoice or bill with duties deducted, were delivered to the defendants, and the property was placed completely at their disposal. This, we think, under the evidence above adverted to, was a sufficient tender and delivery (Hayden v. De Mets, 34 Super. Ct. 344; S. C., 53 N. Y. 426; Story on Sales, § 311; Benjamin on Sales, 558; Dunham v. Pettee, 4 Seld. 508).
The evidence shows that the defendants at no time objected to the delivery of the goods in bond. By their letter of July 18, in which they return the papers sent to them by the brokers, they say that they decline to accept for the “reasons stated before.” But ex *387 press a willingness to take eight hundred and seventy-nine bales out of the lot from the Jaypore.
Now, the only objection which had been at any time before made by the defendants, and those were made after the merchandise had been placed in bond by their directions, were,—1. That any damaged bales on the Jay-pore should be deducted from the two thousand bales. This was yielded, and the objection was removed. 3. That any damaged bales on the Nagpore should be deducted, and this point was also conceded. But as there were no damaged bales, there were no deductions to be made. Their last objection grew out of information they professed to have received, that a portion of the two thousand bales from the Jaypore had been entered by another party and did not belong to the plaintiffs. It was on the basis of this information, without ■doubt, and on the assumption that of the entire shipment on the Jaypore of four thousand three hundred and seventy-two bales, one thousand four hundred and ninety-three had been imported by Findley & Schlicter, or on their account, and that the remaining number, eight hundred and seventy-nine bales only, bad been imported on plaintiffs’ account that the offer of the defendants to take said last mentioned number was made.
Now, the evidence does not show that any portion of the two thousand bales had been entered at the Custom House by Findley & Schlicter, but it does show that the whole number of bales in question, and for the recovery of the price of which this action is brought, were shipped on account of the plaintiffs, and were owned by them.
What the defendants intended by the statement made by them to the plaintiffs as late as July 33, that they thought there was a doubt whether they were bound legally to take the bales, is not clear, unless they referred to the assumption that all these bales had not been Imported for plaintiffs’ account, which was incorrect.
*388 It was too late to object that the two thousand bales, "had. been taken from the cargo of the Jaypore exclusively. For, in making such appropriation, the plaintiffs acted with the defendants’ knowledge and concurrence, and have delivered to others after such appropriation, the butts from the Nagpore. It was too late to obj ect that the merchandise had been placed in bond, for in doing, so, the plaintiffs had but followed the directions given, by the defendants, and by placing the butts in bond had appropriated them to the execution of the contract on their part, and had placed them under the exclusive control of the defendants, and apparently beyond their own power to recall, or otherwise dispose of them.. As far as the duties were concerned their “estimated” amount was deducted from the price of the merchandise, as appears by the bill or invoice rendered to the defendants. In respect to the charges for storage to-which the merchandise was subject, the plaintiffs are not responsible for the charges, as they grew out of the-putting the merchandise in bond, and commenced only when the same was so disposed of.
If put in bond by the defendants’ orders, they, and. not the plaintiffs, are liable for these charges.
For all that the case discloses, the objection that the-amount of duties proposed to be deducted was twenty dollars less than the actual duty to which they were= subject, is now first taken.
It, certainly, was not taken in the defendants’ letter, of July 18, returning the papers. The reasons which influenced the defendants in declining to accept the butts, as they alleged in their letter, had been “ stated before.” No such reason had been assigned at. any time. ,
These objections related to other matters, to which allusion has already been made.
The amount deducted from the price of the butts for duties in the bill rendered,was two thousand one hun *389 dred and. forty-eight dollars. It was statedin the bill that this was the “ estimated duty ” on three hundred and fifty-eight tons. And in the letter of the brokers inclosing this bill, the defendants were asked to “ verify the statements.” The error, if any, as we understood it on the argument, was that the bill rendered stated the number of pounds’ weight incorrectly, there being a mistake of some ten pounds’ weight in the addition or extension. But as the weigher’s returns, accompanying the papers, stated the amount correctly, the mistake was apparent. How the other error, if any, making up this amount of "twenty dollars, arose, is not pointed out, nor is it stated distinctly in what it consists. But it is immaterial.
The objections to the tender having been placed on other grounds, the defendants should not now be .allowed to set up to defeat the plaintiffs’ action, if otherwise meritorious, an undisclosed objection of this nature, involving an amount, trifling, compared with the sum in controversy, and which could have been instantly corrected by the papers furnished to the defendants, which contained accurate information in •detail and which they were asked “to verify.”
In Hayden v. De Mets (supra), there was a slight deficiency in the quantity of copper tendered, but the tender was upheld on the ground that no objection had been made on account of the deficiency, and in that •case there was an offer only to pay storage and charges.
The ease seems to indicate a desire on the plaintiffs’ part fairly to fulfill the contract according to its terms, and to obviate the defendants’ objections, which, as made, were confined to two subjects, damaged butts from the two vessels, and a supposed importation of a portion of the merchandise for the account of others than the plaintiffs. The objections on examination turn out to be groundless.
The evidence also shows that the defendants had •come to the conclusion after the goods were bonded, *390 that the contract if carried out, would entail upon them loss, and that they did not mean to take the butts if they could help it. They so informed the plaintiffs in their last interview with them.
The defendants have a clear right to insist upon every proper objection to the manner in which the plaintiffs have performed the contract on their part, and to the sufficiency of the tender or delivery.
But the objections, to be available, should rest on valid legal grounds. The defense is technical.
We are of opinion that the evidence makes out a. case upon which the plaintiffs were at least entitled, when they rested, to go to the jury. That the question whether or not the defendants had waived compliance-by plaintiffs with the provision of the contract, requiring the payment of the duty, should have been submitted to the jury as a question of fact, and that the-direction of the judge, dismissing the complaint, was-erroneous.
In this view it is not necessary to examine and pass-upon the various exceptions taken to the exclusion off evidence offered by plaintiffs.
We are of opinion, however, that the exceptions to the exclusion of the question, as to whether or not “at the time the defendants directed the brokers to put the goods in bond, anything was said about duty,” was. well taken. We think, also, that the papers and documents received by the judge as evidence, but limited by him as to their effect, are evidence upon the subject off tender and its sufficiency, and their contents, so far as. they go, available for that purpose (Dustan v. McAndrew, 10 Bosw. 130).
The judgment should be reversed, and a new trial; ordered, with costs to the appellants to abide the event..
Fkeedmak, J., concurred.