### SMITH *v.* BRADY.

When, in a contract for the erection of a building upon the land of another, performance is to precede payment and is the condition thereof, the builder having substantially failed to perform on his part, can recover nothing for his labor and materials, notwithstanding the owner has chosen to occupy and enjoy the erection.

Mere occupation of a building, in such case, is not a waiver of strict performance; but the question of waiver is one of intention depending on all the circumstances, of which occupancy may be one.

A party is entitled to retain, without compensation, the benefits of a partial performance, where from the nature of the contract, he must receive such benefits in advance of a full performance, and is by the contract under no obligation to pay until the performance is complete.

APPEAL from the Supreme Court. The complaint was for work done and materials furnished upon the land of the defendant, at his request, to the value of $2295. 60. The answer averred that the work done and materials furnished, with the exception of $295.60 charged for extra work and materials, were furnished and done under two agreements therefor, executed by the parties under seal. These were set out in the answer. By them the plaintiff agreed with the defendant to furnish materials and construct for him and upon his land, three cottages with out-houses and fences. The work was to be done in accordance with certain plans and specifications, except when otherwise provided. It was to be done in the best and most workmanlike manner, and to the entire satisfaction of certain architects who were named in the contract. It was further provided that in case of any extras or omissions in the work, the question between the parties in relation thereto should be submitted to the same architects, and their decision should be final and conclusive in the matter.

For this work, which was to be completed before May 1, 1851, the defendant agreed to pay the plaintiff the sum of $4900, of which a part was to be paid from time to time, as the work progressed, and the balance *"when all the work should be completed and certified by the architects to that effect."*

The answer averred that the plaintiff had not performed the covenants on his part; that the work was not done in the most workmanlike manner, nor to the satisfaction of the architects; that the materials furnished were of inferior quality; that the plaintiff never procured the certificate of the architects, or either of them, that the cottages, or either of them, were completed; that, in respect to the extra work and materials, the defendant had, before the commencement

of the action, disputed the plaintiff's charges and had offered to submit the same to the architects as provided by the agreements, and the plaintiff had refused to submit them.

The plaintiff, in his reply, admitted that he had never procured any certificate of the architects, "in consequence of the unreasonableness and frivolous objections of the said architects, or one of them, in refusing to give any certificate." He further admitted that the work and materials, except as to the extra labor and materials, were performed under the contract set up in the answer.

The trial was before a referee who found that there were omissions and deficiencies in the work and materials which the contracts required to be done and furnished by the plaintiff, and that the loss to the defendant thereby amounted to $212.57; that the plaintiff had done and furnished extra work and materials to the value of $295, and that the defendant, sometime in the month of June, 1851, took possession of the three cottages, without objection at the time, and appropriated the same to his own use. He reported that, after making the proper allowances and deductions to the parties respectively, the plaintiff was entitled to judgment for $1934.43. The questions of evidence which arose upon the trial, and the manner in which they were disposed of, sufficiently appear in the following opinions. The judgment entered upon the report of the referee was, on appeal, affirmed by the Supreme Court, at general term in the second district, and the defendant appealed to this court.

*Nicholas Hill*, for the appellant.

*Wessell S. Smith*, for the respondent.

HARRIS, J. Assuming that the contracts had been so far performed as to justify the plaintiff in treating them as substantially executed, as I am inclined to think they were, yet the final payment for the work was to be made when it was

completed and a certificate of the architects to that effect obtained. The parties have seen fit to make the production of such a certificate a condition precedent to the payment. The plaintiff is as much bound by this part of his contract as any other. It is not enough for him to bring his action and say that he has completed the work which he undertook to do. He has agreed that the architects named should decide whether the work is completed or not. He cannot now withdraw the decision of this question from them and refer it to the determination of a legal tribunal. (*Butler* v. *Tucker*, 24 *Wend.*, 447, *and cases there cited.*)

Had it been shown by the plaintiff that he had made application to the architects for the requisite certificate, and that they had obstinately and unreasonably refused to certify, it might have been proper, perhaps, for the plaintiff to establish his right to recover by other evidence. An opinion to this effect is expressed by McLEAN, J., in *The United States* v. *Robeson* (9 *Peters*, 319). However this may be, it is not pretended in this case that the plaintiff ever made an effort to procure the certificate. The referee merely finds the fact that "the architects had not given certificates that the work was all done and finished."

The referee has found that the defendant took possession of the cottages and appendages, without objection at the time, and appropriated the same to his own use, and it is insisted that, if the production of the architects' certificate was a condition precedent to the right of the plaintiff to bring his action for the balance due upon the contracts, yet the defendant has waived this condition by accepting the work without objection; but it is a sufficient answer to this position to say that, whether or not the performance of the condition in question was waived was a question of fact to be determined by the referee from the evidence before him, and no such fact has been found by him. (*Vanderbilt* v. *The Eagle Iron Works*, 25 *Wend.*, 665.)

Thus far I have considered the case with reference

to the final certificate of the architects, but the provision in the contracts which requires all questions relating to extra work and omissions or deficiencies to be submitted to the architects, and declares their decision to be final and conclusive in the premises, deserves to be noticed. It is not pretended that the plaintiff ever offered to make this submission in relation to his claim for extra work. The referee has wholly disregarded this provision, and tried the case as though it was not to be found in the contracts. In this I think he erred. To avoid a protracted and expensive litigation, such as this has proved to be, the parties agreed that, in respect to all disputes between them in relation to the work, the architects should be the ultimate arbiters. All claims of the plaintiff for work not embraced in the specification were to be submitted to them, and their judgment was to be final. All claims of the defendant for deductions or allowance on account of the omission of the plaintiff to perform the work according to the contracts were to be determined in the same manner; and thus, with the award of the umpires upon the claims which the parties might mutually make against each other, and their certificate showing the completion of the work, all ground for controversy would be removed. This was the manifest intention of the parties when they made their contracts. It was wholly overlooked or disregarded on the trial.

I have said enough, I think, to show that the case has been tried upon an erroneous theory, and that the judgment should be reversed. And yet, in reference to another trial, it may not be useless to notice one or two decisions made by the referee upon questions of evidence, which are deemed to be erroneous.

One of the architects mentioned in the contracts, and who had examined the work, had described in his testimony a great number of defects and omissions. He was then asked what it would cost to make the buildings conform to the contracts, plans and specifications. The question

was objected to, and the objection sustained. I think the witness should have been allowed to answer the question. It was a legitimate mode of ascertaining the damages to which the defendant was entitled by reason of the failure of the plaintiff to do what he had agreed to do. He had agreed to construct houses according to certain plans and specifications. The defendant had entitled himself to have such houses constructed, and was not bound to allow the plaintiff to substitute anything else in their place. Just so far as the houses built by the plaintiff differed from those he had agreed to build, just so far the defendant had a right to have them altered at the expense of the plaintiff. This was the true rule of damages. The defendant had a right to know, therefore, from one competent to speak on the question, what it would cost to make these alterations. (*Ladue* v. *Seymour*, 24 *Wend.*, 60.) For the same reason I think the witness should have been allowed to state what in his opinion was the difference in value between the cottages as they were built by the plaintiff, and the same cottages if completed according to the contracts. There was no pretence that he was not qualified to testify upon such a question.

The plaintiff, against the objection of the defendant, was allowed to inquire of a witness whether the houses without certain joists and beams, which were required by the specifications but had been omitted by the plaintiff, were sufficiently strong for the character of the buildings. This testimony should have been excluded. It was entirely immaterial whether the houses as constructed were sufficiently strong or not. The defendant had a right to prescribe the manner in which he would have the houses constructed. He had agreed to pay the plaintiff his price for so constructing them. It did not lie with him to say that another mode of construction would do just as well. The admission of such testimony tends to show that the

referee misapprehended the principles of law applicable to the case.

For all these reasons I am of opinion that the judgment of the Supreme Court should be reversed, and a new trial granted with costs to abide the event.

SELDEN, DENIO, ROOSEVELT and PRATT, Js., concurred in this opinion.

COMSTOCK, J.   It is easy to understand, from all that took place on the trial, that the defendant intended to object to any recovery against him for work done or materials furnished under the special contracts, on the ground that those contracts had not been performed by the plaintiff.   But he appears to have been somewhat unfortunate in presenting that objection at such a time and in such a manner as to lay the foundation for a review in this court of the decisions made against him.   The question intended to be raised was first suggested at the opening of the trial, when, as the case states : " The defendant's counsel objected to any evidence in relation to work done on the houses required by the contracts, inasmuch as it appeared by the pleadings that it was done under covenants *and no performance shown,* the defendant's counsel insisting that the action was in fact on the covenant, a strict performance of which was required by law."   I do not see how such an objection could avail anything at that time; for, until the evidence was given, it could not appear whether the contract had been performed or not.   The evidence was therefore properly received.

The referee, in making his report, which is referred to in the case and may therefore be considered as a part of it, finds as facts that the work (except as to the $295) was done under the special contracts ; that there were " some omissions and deficiencies in the work and materials which the contract required to be done by the plaintiff, the value of which, or, in other words, the loss to the defendant

thereby," amounted to $212.57.   He also found that the defendant "took possession " of the three cottages thus built for him " *without objection at the time, and appropriated the same to his own use*."    Upon these facts, the referee held as a conclusion of law that the plaintiff was entitled to recover for the work done and materials furnished under the contracts, at the stipulated prices, after deducting the defendant's damages, on account of the omissions and defects before stated.    The particulars in which the referee found the contracts not performed are not stated in his report, but they could not have been so unimportant that the law will refuse to notice them, because, in the same report the value of those particulars is ascertained to be over $200.    Nor is it found that the plaintiff intended to perform his contract. For aught that appears, the omissions and defects were intentional and willful, and, in the absence of all explanation, the presumption is that they were so.

If, therefore, the defendant had excepted to the legal conclusion of the referee upon the facts found by him, that exception would have presented with great distinctness the questions upon which the defence was no doubt intended principally to turn.   But no such exception appears to have been taken, and it follows that those questions are not before us for examination, unless we can see that they were involved in some ruling of the referee during the trial which has not yet been noticed.

It was one of the specifications of the contract that the "nailing joists" in the frames of the cottages were to be twelve inches apart, measuring from centre to centre.   The defendant's evidence tended to show that these joists were in fact placed sixteen inches apart; that, in consequence of this departure from the specification, the number of joists used in all the buildings was less by about two hundred than the contract called for ; that this defect in the work affected the value, strength and substantial character of the buildings.   It appeared, also, that there was a similar breach of

Smith *v.* Brady.

contract in respect to the distances between the beams in the third floor of the houses, being in fact twenty-four inches apart, while the contract allowed only sixteen. To meet the defence so far as it depended on these particular departures from the contract, the plaintiff was allowed to call other mechanics and ask them as follows : " Are the houses without these deficient joists and beams, sufficiently strong for the character of the buildings?" The evidence was objected to on the part of the defendant, but the objection was overruled, the plaintiff's counsel stating that the object of the inquiry was to ascertain what damages, if any, should be allowed by reason of this deficiency in the work. This ruling of the referee was duly excepted to; and the evidence being given tended to show that the houses were sufficiently strong, that the joists and beams were placed at distances customary in that neighborhood, and that the defendant really was not injured at all by this violation of the contract. The question now to be determined is whether this evidence was proper; and this will, I think, involve the inquiry whether the plaintiff, having failed in substantially performing the contract, was entitled to recover for his work and materials, making to the defendant an allowance for the breaches, to be adjusted according to some principle of equity. The violation of the contract in several particulars had already appeared when this ruling was made. Indeed, the evidence itself, so offered, objected to and received, assumed that the contract had been departed from in respect to a specification about which it was impossible to err innocently. In avowing the object for which it was offered, the plaintiff necessarily assumed that a breach of the contract, instead of being fatal to a recovery, was the subject of equitable compensation merely; and in receiving such evidence the reference must have sustained that assumption. The defendant having chosen to require, in the plain letter of the contract, that there should be in each building a certain number of joists and beams placed at certain dis-

tances from each other, the plaintiff had no right to substitute another plan for this part of the work; nor could he justify his willful departure from the contract by the opinion of other builders, or by any custom whether local or general. All this is extremely evident; yet, if the only consequence of so violating a contract of this kind is, that the injured party shall be compensated in damages, there was no error in receiving the evidence.    Upon the mere question of compensation that evidence bore with entire directness and force. We are therefore obliged to consider this question of law: in a building contract, where performance is to precede payment and becomes a condition thereof, can the builder, having failed to perform on his part, recover for his work or materials, making to the other party a compensatory allowance for the wrong done to him, it being also a further condition of the question that the employer chooses to occupy and enjoy the erection rather than to remove or require the builder to remove it from his premises?

The right to recover in such a case has never been referred to any doctrine peculiar to such contracts.   On the contrary, if we look at the adjudged cases, we shall find that the right, whenever asserted by judicial tribunals, has been supposed to result from a general doctrine applicable as well to other contracts.   In *Hayward* v. *Leonard* (7 *Pick.*, 181), the action was on a conditional note, to be void if the plaintiff failed to perform an agreement of the same date, by which he undertook to build a house for the defendant of a certain size and in a specified manner.   The defence was that the house, although built within the time agreed on, was not in workmanship and materials according to the contract.   Chief Justice PARKER said: "The point in controversy seems to be this: whether, where a party has entered into a special contract to perform work for another and to furnish materials, and the work is done and the materials furnished, but not in the manner stipulated for in the contract, so that he cannot recover the price agreed by

action on that contract, yet, nevertheless, the work and materials are of some value and benefit to the other contracting party, he may recover on a *quantum meruit* for the labor, and on a *quantum valebant* for the materials." He adds: "We think the weight of modern authority is in favor of the action, and that, upon the whole, it is conformable to justice that the party who has the possession and enjoyment of the labor and materials of another shall be held to pay for them, so as in all events he shall lose nothing by the breach of the contract." In that case, there were some special facts, but the decision seemed to turn essentially on the general principle suggested in the remarks quoted, and the principle was more emphatically approved by the same court in the subsequent case of *Smith* v. *The First Congregational Meeting House in Lowell* (8 *Pick.*, 178), which was also upon a building contract.

It will be convenient next to cite a case directly opposed which arose in the English Common Pleas, and was tried before Sir JAMES MANSFIELD. (*Ellis* v. *Hamlin*, 3 *Taunt.*, 52.) The action was by a builder against his employer. The defence was, and the evidence supported it, that the plaintiff had omitted to put into the building certain joists and other materials. The plaintiff failing to prove performance of the special agreement resorted to a general count for work, labor and materials, claiming that the defendant having the benefit of the houses, was bound at least to pay for them according to their value. But Chief Justice MANSFIELD repudiated that doctrine. He said: "The defendant agreed to have a building of such and such dimensions. Is he to have his ground covered with buildings of no use, which he would be glad to see removed, and is he to be forced to pay for them besides? It is said he has the benefit of the houses, and therefore the plaintiff is entitled to recover on a *quantum valebant*. To be sure it is hard that he should build houses and not be paid for them; but the difficulty is to know where to draw the line, for if

the defendant is obliged to pay for one deviation from his contract he may equally be obliged to pay for anything how far soever distant from what the contract stipulated for." The plaintiff was accordingly nonsuited; and as the reporter states, the case was never moved again.

The two cases in Massachusetts above cited, and the one before Sir JAMES MANSFIELD, were referred to in *Britton* v. *Turner* (6 *N. H.*, 481). That was a very elaborately considered case. The plaintiff had agreed to work for the defendant for one year, and the defendant was to pay for that labor one hundred and twenty dollars. The plaintiff abandoned his contract without cause before the year was out. It was nevertheless held that he could recover as much as the labor was reasonably worth, there being no evidence of any special damages sustained by the defendant in consequence of the non-performance of the contract. The two cases in Massachusetts were cited with approbation by the court, while that before Chief Justice MANSFIELD was necessarily disapproved. In referring to that class of cases arising on building contracts, it was observed that such cases could not be distinguished from the one then under consideration " unless it be in the circumstance that when a party has contracted to furnish materials and do certain labor, as to build a house in a specified manner, if it is not done according to the contract the party for whom it is built may refuse to receive it, elect to take no benefit from what has been performed, and therefore if he does receive it he shall be bound to pay the value, whereas in a contract for labor merely, from day to day, the party is continually receiving the benefit of the contract under an expectation that it will be fulfilled, and cannot upon the breach of it have an election to refuse to receive what has been done, and thus discharge himself from payment." " But we think," the court proceeded to say, " this difference in the nature of the contracts does not justify the application of a different rule in relation to them." " There

was just as much reason," it was added, " why the employer should pay the reasonable worth of what has been done for his benefit as there is when he enters and occupies the house which has been built for him but not according to the stipulations of the contract, and which he perhaps enters, not because he is satisfied with what has been done, but because circumstances compel him to accept it such as it is, that he should pay for the value of the house." There are few cases to be found in the books more consistently reasoned than this one in the Supreme Court of New Hampshire, although the decision stands directly opposed to the settled law of this state. I have referred to it, as well as the Massachusetts cases, somewhat at large, in order to show that the supposed liability of a person who enters and occupies a building erected on his ground to pay the builder, although the latter failed in performing his contract, has always been referred to the general doctrine that benefits received and retained under a contract must be paid for without regard to the conditions of the contract itself. I am confident that no case can be found in which the building contractor's right to recover has been maintained on the ground that the owner by the mere possession and occupancy of the building has waived the condition of performance.

The true inquiry then is, whether there is in the law of contracts in general any such doctrine as that upon which the cases referred to in New Hampshire and Massachusetts were determined. To those cases others might be added proceeding essentially on the same ground; yet the rule, I think, is quite well settled the other way. It is certainly so in this state. (*McMillan* v. *Vanderlip*, 12 *John.*, 165; *Thorpe* v. *White*, 13 *id.*, 53; *Jennings* v. *Camp*, *id.*, 94; *Champlin* v. *Rowley*, 13 *Wend.*, 258; *S. C. in error*, 18 *id.*, 187; *Paige* v. *Ott*, 5 *Denio*, 406; *Pike* v. *Butler*, 4 *Comst.*. 360; *Pullman* v. *Corning*, 5 *Seld.*, 93.) Among these cases, *Champlin* v. *Rowley* may be referred to as a decisive determination of the question. The action was to recover the

price of hay sold and delivered. The plaintiff had agreed to deliver to the defendant one hundred tons of pressed hay between the date of the contract and the close of navigation on the Hudson river, $100 to be paid in advance and the residue when the whole should be delivered. About fifty tons were delivered before the navigation closed, when the further delivery was interrupted. The defendant sold or used the quantity which he received under the contract. The $100 due in advance having been paid, it was held by the Supreme Court that entire performance was the condition of any further payment, and therefore that the plaintiff could not recover. The case was very carefully considered, on error, in the court of last resort, where the judgment was affirmed. The case cited in the Supreme Court of New Hampshire was referred to, and that, as well as the class of cases to which it belongs, were expressly overruled. Indeed, in this state the sanctity of contracts. in this respect at least, has been steadily maintained, and no encouragement has ever been given to that loose and dangerous doctrine which allows a person to violate his most solemn engagements and then to draw the injured party into a controversy concerning the amount and value of the benefits received.

I think the principles which have with us been so uniformly asserted should have a peculiar application in contracts like the one under consideration. I suppose it will be conceded that every one has a right to build his house, his cottage or his store after such a model and in such style as shall best accord with his notions of utility or be most agreeable to his fancy. The specifications of the contract become the law between the parties until voluntarily changed. If the owner prefers a plain and simple Doric column, and has so provided in the agreement, the contractor has no right to put in its place the more costly and elegant Corinthian. If the owner, having regard to strength and durability, has contracted for walls of specified materials to be laid in a particular manner, or for a given number of

Smith *v.* Brady.

joists and beams, the builder has no right to substitute his own judgment or that of others. Having departed from the agreement, if performance has not been waived by the other party, the law will not allow him to allege that he has made as good a building as the one he engaged to erect. He can demand payment only upon and according to the terms of his contract, and if the conditions on which payment is due have not been performed, then the right to demand it does not exist. To hold a different doctrine would be simply to make another contract, and would be giving to parties an encouragement to violate their engagements, which the just policy of the law does not permit.

Cases of this kind must not be confounded with others having, perhaps, a slight resemblance but no real analogy. No doubt a person may voluntarily accept a benefit under a contract of which the conditions precedent have not been performed by the other party, and he may do this in such circumstances that a new obligation to pay for the benefit will arise. Thus, if A. should agree to manufacture and deliver to B. a carriage of a particular kind and should make a different one, B. may elect whether he will take it or not. Until he so elects, he has no property in the fabric. If he voluntarily accepts the article, he thereby either waives the objections which he might make to it and is liable to pay for it according to his contract, or a new assumpsit arises from the act of acceptance as though no previous agreement had existed. The case cited on the argument of *Vanderbilt* v. *The Eagle Iron Works* (25 *Wend.*, 665) was determined very distinctly upon these principles.

But the rule, as it is well settled with us, allows a party to retain without compensation the benefits of a partial performance, where from the nature of the contract he must receive such benefits in advance of a full performance, and by its terms or just construction he is under no obligation to pay until the performance is complete. Thus, if a person engages to perform a year's labor for another, and pay-

ment is to be made when the labor is done, in such a case the employer necessarily receives the benefit of each day's service when it is done, yet if the laborer without just cause abandons the service at any time, however short, before the year has expired he can recover no part of his wages. ( *Cases, supra.* ) So the contract may be to sell and deliver goods at different times, to be paid for when the whole are received. If the vendor refuses to perform entirely, without good cause, the purchaser is neither bound to pay for nor to return the goods received in part performance. ( *Champlin* v. *Rowley, supra.* ) If A. should agree to plow the field of B., consisting of twenty acres, at a given price for the whole service, or at so much per acre to be paid when the service is done, and after plowing nineteen acres should abandon the contract, he can recover nothing for his work. The owner of the field may enter, sow it with his grain and reap the harvest, thus enjoying fully the benefits of the part performance. In so doing he waives nothing; because he cannot reasonably do otherwise. He is not obliged to abandon his field in order to be enabled to insist upon the condition of the contract. Closely analogous is the case of a building contract. The owner of the soil is always in possession. The builder has a right to enter only for the special purpose of performing his contract. Each material as it is placed in the work becomes annexed to the soil, and thereby the property of the owner. The builder would have no right to remove the brick or stone or lumber after annexation, even if the employer should unjustifiably refuse to allow him to proceed with the work. The owner, from the nature and necessity of the case, takes the benefit of part performance, and therefore by merely so doing does not necessarily waive anything contained in the contract. To impute to him a voluntary waiver of conditions precedent from the mere use and occupation of the building erected, unattended by other circumstances, is unreasonable and illogical because he is not in a situation to elect whether he will or will

not accept the benefit of an imperfect performance.    To be enabled to stand upon the contract he cannot reasonably be required to tear down and destroy the edifice if he prefers it to remain.   As the erection is his by annexation to the soil he may suffer it to stand, and there is no rule of law against his using it without prejudice to his rights.

The present case was evidently tried upon an erroneous theory of the law.   Although partial payments were to be made as the work proceeded under the contracts, yet the consideration and condition of those payments was the performance of the work according to the plans and specifications, and in the best and most workmanlike manner, and the final payments were not to be made until after all the work was completed and certified by the architects.   Although the contracts were not performed, the plaintiff has recovered all the installments, less the sum which the referee allowed as damages for the non-performance.   In receiving the evidence as to the value and strength of the buildings, nothwithstanding non-performance of the contracts, evidence which could have no bearing except upon the question of damages, it is manifest that he proceeded upon views of the law in such cases which I have endeavored to show are unsound.

It is not necessary to give any opinion upon the question whether the referee might properly find upon the evidence that the defendant waived the conditions of the contract by any express approval of the work, or by any other interference or conduct on his part.   We only say that, according to the settled law in this state, the plaintiff cannot recover the payments which by the terms or true construction of the contract are due only on condition of performance by him, unless he can show such performance or prove that it has been waived.   And the law does not adjudge that a mere silent occupation of the building by the owner amounts to a waiver, nor does it deny to him the right so to occupy and still insist upon the contract.   The question of waiver of the condition

precedent will always be one of intention to be arrived at from all the circumstances, including the occupancy.

To conclude, there is, in a just view of the question, no hardship in requiring builders, like all other men, to perform their contracts in order to entitle themselves to payment, where the employer has agreed to pay only on that condition. It is true that such contracts embrace a variety of particulars, and that slight omissions and inadvertences may sometimes very innocently occur. These should be indulgently regarded, and they will be so regarded by courts and juries. But there can be no injustice in imputing to the contractor a knowledge of what his contract requires, nor in holding him to a substantial performance. If he has stipulated for walls of a given material and with a hard inside finish, he knows what he is to do and must perform it. If he has engaged for a given number and size of windows, joists, beams and sills, he cannot, with the specifications before him, innocently depart from his contract. If he fails to perform when the requirement is plain, and when he can perform if he will, he has no right to call upon the courts to make a new contract for him; nor ought he to complain if the law leaves him without remedy.

The judgment should be reversed and a new trial granted.

All the judges concurred in this opinion.

Judgment reversed, and new trial ordered.