WILLIAM HARRIS, Respondent, *v.* ISAAC RATHBUN, Appellant.

A contract for the sawing of lumber from logs provided, on the part of the mill owner, that he would " saw it in a good and workmanlike manner, and take pains and saw all the clean stuff, select box, that could be got out of the logs, and would saw all the bark from the edge board, and what was sawed into inch should be plump inch," and if any of the lumber should be spoiled in sawing the mill owner was to retain it and allow a specified price.

The lumber was all taken by the owner, but not without objection that it was not sawed in a workmanlike manner.

*Held*, that upon the trial of an action to enforce payment of the contract price for sawing the lumber the defendant should have been permitted to show as he offered to do:

1. That the lumber was not sawed in a workmanlike manner, and

2. That among lumbermen spoiled lumber is that which is rendered unmarketable.

Under a contract like the above, the owner had no option to refuse any lumber, except such as was spoiled; *hence* his acceptance of the lumber, was not a waiver of his claim for damages for such as was sawed in an unworkmanlike manner. MORGAN, J.

The sawing of the lumber into inferior qualities did not *spoil* it so as to render it unmarketable, and did not bring it under that branch of the contract which required the mill owner to retain and pay for it.

APPEAL from judgment of Supreme Court at General Term affirming judgment entered upon report of referee in favor of the plaintiff.

*D. Rumsey*, for the appellant.

*A. P. Ferris*, for the respondent.

MORGAN, J.   The defendant claimed that he was entitled to damages, because the plaintiff had not sawed his lumber in a good and workmanlike manner.   The case concedes that the defendant received the lumber without rejecting any part of it, although the contract stipulated that, if the plaintiff spoiled any of the lumber in sawing it, he was to take it and pay for it at a price agreed upon between the parties.

The defendant, however, offered to prove that the lumber was not sawed in a good and workmanlike manner. This offer was objected to on the ground that the contract designated all lumber not sawed in a good and workmanlike manner as spoiled lumber. The referee sustained the objection and excluded the evidence. The defendant then offered to prove that, when he took the lumber away, the parties disagreed in respect to the quality of the sawing, the defendant contending that it was not sawed in a good and workmanlike manner, and the plaintiff insisting that it was. This evidence was overruled. The defendant then proposed to show that, among lumbermen, *spoiled* lumber is that which is rendered unmarketable. This evidence was likewise rejected.

It is argued by the plaintiff's counsel that *spoiled* lumber was defined by the contract to include all such as was not well sawed according to the specifications of the contract. The contract required the plaintiff to "saw it in a good and workmanlike manner, and to take pains and saw all the clean stuff, select box, that could be got out of the logs, and to saw all the bark from the edge board, and what was sawed into inch was to be sound *plump* inch." It further provided that, if the plaintiff should *spoil* any lumber, he should retain it and allow a specified price. I am unable to appreciate the position taken by the plaintiff that, by the terms of the contract, lumber not sawed according to these specifications was *spoiled* lumber. I should infer, from the known and acknowledged signification of the word, that, by *spoiled* lumber, it was only intended to include such as was rendered unfit for market. I think we may assume that there are different grades of lumber in the market, and that its quality may depend, in a considerable degree, upon the manner in which it is sawed.

The contract plainly implies that certain logs which might be suitable for clear stuff, select box, might be wasted, or sawed into a second or inferior quality of lumber, but which would nevertheless be marketable, and could not by any sensible interpretation of the contract be included among lumber that was spoiled. This was what the defendant proposed to

prove by the custom of merchants, but which I think was properly overruled; and I agree with the plaintiff's counsel that the contract was unambiguous, and did not require extraneous evidence to interpret its meaning; while I am clearly of opinion that he is wrong in his interpretation of it.

If, however, the word admits of two interpretations, and if it had acquired a technical meaning among lumbermen when applied to the trade or business of manufacturing logs into lumber, it was competent for the defendant to prove the general custom in order to fix its meaning in the contract. Evidence of general usage in the trade to which the contract refers is admissible to give a particular sense to the words employed, as the parties may be presumed to have contracted in conformity with the custom, and to have used the word in the customary trade acceptation. (Addison on Cont., 854; *Drown* v. *Kittle*, 4 Hill, 107.)

The offer was not as broad as it should have been, for it did not propose to prove a *general* custom. It does not, however, appear that the offer was overruled for this reason. But it is the business of counsel to make the offer sufficiently broad to justify the evidence. If the question turned upon this exception, it would, perhaps, be difficult to sustain it, as the offer was not sufficiently comprehensive.

The principal question is, whether the referee erred in overruling the defendant's offer to prove that the lumber was not sawed in a good, workmanlike manner. The offer does not specify wherein the plaintiff failed to comply with the regulations of the contract. I was at first inclined to the opinion that the offer was too general and indefinite to sustain an exception; but as the referee excluded it upon another ground which could not be obviated by making it more specific, I think the exception is sufficient to raise the question.

It will be seen that the defendant was the owner of the logs, and employed the plaintiff to manufacture them into lumber. The law would perhaps imply that he was to do it in a good and workmanlike manner, but the contract goes further, and specifies several particulars as to the manner in

which the work was to be done. It is apparent that the parties themselves defined what should be considered good workmanship; and if the offer had not been excluded, it may be presumed that he might have proved some of the allegations contained in his answer; among which is one, "that a large portion of said logs that would have made clear stuff or select box boards, were wasted in the sawing thereof." Another allegation was, that portions were left with the bark on the edge, and a portion intended to be sawed inch stuff was not sawed plump inch, a part thereof being over, and another part less than an inch. It is very probable that these allegations of the answer could not have been sustained by proof to any considerable extent; but I do not think we are at liberty to say that the defendant could not have proved some of them, so as to lay the foundation for damages.

The ground upon which the rejection of this evidence is maintained by the plaintiff is, that the defendant, by receiving the lumber, waived his claim for damages. This ground of objection should be considered in connection with the defendant's offer to show that he objected to the workmanship when he took the lumber. In this view of the case, I think it cannot be said that there was any intention to waive his claim for damages. The plaintiff's counsel relies upon the authority of *Reed* v. *Randall* (29 N. Y., 358), and kindred cases. Conceding that case was rightly decided, it does not authorize the application of the doctrine of waiver in a case like this; for here the defendant had no option to refuse any lumber, except such as was spoiled, not such as was sawed into inferior qualities. In executory sales of property, the purchaser is at liberty to reject or to return the article, if it does not answer the contract.

The only doubt I have of the correctness of the principle, decided in *Reed* v. *Randall*, is, that it may operate to deprive a purchaser of the benefit of his contract. It requires him to reject the article which may be worth much more to him than he contracted to give for it, or else to lose his claim to damages. But that case cannot be invoked as

an authority for refusing damages in a case where one man employs another to saw his lumber or to build him a house. The owner has no right of election in such a case upon which to predicate a waiver of damages for non-performance of the contract according to its terms.

In my opinion the judgment should be reversed, and a new trial granted.

HUNT, J. The plaintiff carried on a steam saw-mill in Steuben county, and on the 10th day of January, 1858, entered into a contract with the defendant to saw his logs into lumber. All that is material of the contract now to be considered is embraced in the following language: "I, Wm. Harris, agree to saw all the logs into lumber for said Rathbun that he shall draw to the mill for one year to come, and to saw the same into such lumber as said Rathbun shall from time to time order and direct; and I agree to saw it in a good, workmanlike manner, and to take pains to saw all the clear stuff, select box, that can be got out of the logs, and to saw all the bark from the edge board, and what is sawed into inch is to be sawed plump inch; and if said party of the first part shall spoil any lumber, he is to take it and pay the party of the second part what he shall get for the remainder, deducting the drawing."

A portion of the price for sawing was to be paid as the work progressed, and the remainder after the work was finished. The action is brought to recover such remaining portion.

On the trial, the plaintiff proved that he had sawed for the defendant under this contract 165,090 to 187,000 feet of lumber. It was admitted that the defendant took possession of the lumber and drew it away from the mill and disposed of it.

The defendant then offered to prove that the lumber was not sawed in a good and workmanlike manner, as required by the contract. This was objected to, on the ground that the contract provides that if the plaintiff spoils any lumber he is to take it and pay the defendant for it; that all lumber

not sawed according to the contract is to be deemed spoiled lumber; and that it was the duty of the defendant to have offered it to the plaintiff, and that he should have refused to accept it, before the present defense would be available. The referee so held and excluded the evidence.

As I construe the contract, it contains distinct clauses on this head. First, that Harris will saw the logs into such lumber as Rathbun shall direct. This I assume to include width and thickness, and it is in legal effect the same as if Rathbun had stipulated in writing that one-third thereof should be ten inches wide and one and a half inches thick, and the residue one-half thereof to be one inch thick; the remaining portion three-quarters of an inch thick, or of any other specific dimensions. Secondly, Harris agrees to saw all this "in a good, workmanlike manner;" in other words, the sawing shall be of the smooth and even character belonging to a steam mill, rather than a water mill. The ends shall be perfectly trimmed; the same board shall not be thicker or wider at one end than the other. Thirdly, he agrees to saw all the clear stuff select box, that can be got out of the logs. By clear stuff is supposed to be meant boards having neither knots, decay or shakiness in them; and this he agrees to saw into a character of lumber called select box boards. Fourthly, he is to saw all the bark from the edge board, and what is sawed into inch boards is to be plump inch thick. Lastly, he agrees that if he spoils any lumber, or if he renders it of no value in any form or class he will keep it and will pay to Rathbun its value.

The plaintiff in his next objection refused to allow the referee to be informed as to the meaning of the term spoiled lumber, and this court was thereby also deprived of the light to be afforded by that information. We must therefore act upon our own intelligence on the subject.

Lumber is useful and more or less valuable in all its conditions, whether in the shape of slabs, its least valuable form of manufacture, or in that of select clear stuff boards, or in the form of square timber. Boards of the thickness of one inch and a quarter, which will make them of one inch thick-

ness when dressed, are more valuable than those of one inch merely, and these again are more valuable than those being merely three-quarters of an inch in thickness. I cannot think however, that, if a board is but three-quarters of an inch in thickness, when with proper care it might have been made an inch thick, the board is thereby spoiled. It is certainly spoiled as an inch and a quarter board, but it has a market value as a board of a less dimension. A board which is not a plump inch thick is valuable as a board of the next lower degree. A board that has a wany edge is not a handsome, well-dressed article of the highest class, but the passage through it of a circular saw, at a trifling expense, would completely restore it, and I cannot think the bark upon the edge can be said to have spoiled the board. The butts may not be properly cut off from the boards; the sawing may be rough and uneven; the boards may be dirty and weather-stained, they may have bark or wane upon the edges, but they are not thereby rendered valueless.

I think there is in this distinct contract, an agreement by Harris, that if he spoils or entirely destroys any of the lumber—renders it of no value in any class or grade—he will keep it and pay its value, and that it also contains in express terms the ordinary agreement to perform his business in a workmanlike manner, for the breach of which he is liable in damages.

In an action now brought by the sawyer to recover the price agreed to be paid for the sawing, the other party having taken away the lumber, objecting, at the time, that it was not sawed in a workmanlike manner, can the objection be made that the work was not well done and a recoupment of damages be made?

The plaintiff rested his objection upon the specific ground that, if not sawed according to the contract, the lumber was to be deemed spoiled lumber, and to be kept by the plaintiff, and did not object that the lumber had been received by the defendant, and that he was thereby precluded from finding fault with it. I have endeavored to show the unsoundness of this proposition.

That the defendant did not intend to waive a complete performance, but that when the lumber was removed he complained that the work was not well done, is to be assumed as a fact in determining the present question. The next offer of the defendant was to show such complaint on his part.

The case comes within *Smith* v. *Brady* (17 N. Y., 173), which holds that where work is to be done, and performance is to precede payment, and is the condition thereof, the party doing the work having failed substantially to perform on his part can recover nothing for his labor or his materials, notwithstanding the other party has chosen to occupy and enjoy the erection. (See also *Ellis* v. *Hamlin*, 3 Taunt., 52; *Champlin* v. *Rowley*, 13 Wend., 258; *S. C.*, 18 id., 187.)

The case of *Reed* v. *Randal* (29 N. Y., 358) was of a different character. That was not a case of work to be done or services rendered, whose performance was to precede payment, but of the sale and delivery of property contracted for at a specified price, received by the vendee without objection, and no complaint made for several months.

I think there should be a new trial.

LEONARD, SMITH and PECKHAM, JJ., concurred.

WRIGHT, J. (dissenting). The plaintiff and defendant were lumbermen; the former engaged in manufacturing, and the latter in furnishing logs to be manufactured into lumber, and then selling it. In January, 1857, the parties entered into a contract in writing, the terms of which were, that the plaintiff was to saw all the logs into lumber for defendant, that the latter should draw to his mill for one year to come; to saw the same into such lumber as the defendant should from time to time order and direct; and, quoting the language of the writing, " to saw it (the lumber) in a good, workmanlike manner, and to take pains and saw all the clear stuff, select box, that can be got out of the logs, and to saw all the bark from the edge board, and what is sawed into inch is to be sawed plump inch, and if said party of the first part (the plaintiff) shall *spoil* any lumber, he is to take it, and pay the party of

the second part (the defendant) what he shall get for the remainder, deducting the drawing per thousand feet therefrom." The price for sawing was to be two dollars and fifty cents per thousand feet, to be paid in the way and at the times specified in the writing.

The plaintiff sawed, under the contract, all the logs furnished by the defendant, into lumber, and the defendant accepted the lumber, drew it away, and sold it.

On the trial the defendant offered to show, " that the lumber was not sawed in a good and workmanlike manner;" which proof was rejected by the referee, and this ruling presents the only question of importance in the case. I think the evidence was rightly excluded.

The sawing was done under and in pursuance of a contract between the parties. That contract must control as to how the lumber was to be sawed; and its language is to be interpreted in the sense in which it was used and understood by the parties, at the time it was made. " I agree," is its language, " to saw it in a good and workmanlike manner, and to take pains, and saw all the clear stuff, select box, that can be got out of the logs, and to saw all the bark from the edge boards, and what is to be sawed into inch is to be sawed plump inch, and if said party of the first part shall spoil any lumber he is to take it, and pay the party of the second part what he shall get for the remainder, deducting the drawing per thousand feet therefrom." There seems nothing here equivocal or ambiguous. The words "in a good and workmanlike manner," evidently, I think, refer to the manner of sawing, that is, he (the plaintiff,) shall " take pains and saw all the clear stuff, select box, that can be got out of the logs, " saw all the bark from the edge boards," and " what he saws into inch, saw it plump inch," in a good and workmanlike manner. From the language used by the parties, it was understood by them that if the logs were sawed, as specified, viz. : " all clear stuff, select box, that could be got out of the logs," " all the bark sawed from the edge boards," and " all inch boards sawed plump inch," they were sawed in a good and workmanlike manner.

The contract, then, specifies how and in what manner the lumber shall be sawed, and provides a mode of settling the damages, if any, arising from bad sawing. "If the plaintiff shall 'spoil' any lumber, he has to take it and pay the defendant what he shall get for the remainder, deducting the drawing per thousand feet therefrom." This means, simply, that, if the lumber shall not be sawed in the manner provided in the contract, or, if any of it shall be damaged by sawing, so as to depreciate its value or injure the sale of the different qualities designated by the contract, that then the defendant is not to accept it, and the plaintiff is to take what is so injured and pay for it; or, in other words, if the plaintiff shall saw any of the logs into lumber, so as to reduce the lumber from a higher to a lower grade, thereby lessening its value, such lumber he shall take and pay for; and, if he shall saw any of the logs that would make clear stuff lumber into any other quality than select box, that he should take and pay for; and such boards as the bark was not sawed from the edges, and such lumber that was to have been sawed plump inch, and was sawed less, he was to take and pay for. The parties were lumbermen, and it was plainly in this sense that they understood and used the term *spoiled*.

The parties, then, having, by the contract, fixed the mode of settling the damages, if any, arising from bad sawing, they were bound by it. The defendant could not accept, remove and dispose of the lumber, and afterward insist that the sawing was not done according to contract, and claim damages on that ground. His right to damages on that ground did not survive the acceptance of the lumber by him. By the provisions of the contract, the plaintiff was to take and pay for the lumber " *spoiled*," and all not sawed according to the contract was within that description. It was his privilege, as well as his duty, to do so, and it was for his protection and benefit, as well as the protection and benefit of the defendant. If the defendant claimed that the sawing was not according to the contract, he should have left that part of the lumber not so sawed and called upon the plaintiff to keep it and pay for it; and, had the plaintiff refused to take

it, then he could have set off his damages in an action by the plaintiff to recover his pay for the sawing. But, having accepted and disposed of all the lumber sawed (not insisting that the plaintiff should take and pay for any part of the same, as being badly sawed) it was an admission on his part that it was sawed according to contract, in a good and workmanlike manner, and that none of it was *spoiled* in sawing.

· I am of the opinion, therefore, that the ruling of the referee was not erroneous. The defendant was estopped from showing that he sustained damages after having accepted the lumber and disposed of it. It is argued that if the lumber was not sawed according to the contract, to the defendant's damage, he should have a remedy somehow. Undoubtedly, and a complete one was, in terms, provided. The plaintiff was to keep all the lumber not sawed, as the contract provided, that is *spoiled*, and pay for it at the prices obtained by the defendant at the place of sale for that sawed according to its provisions, deducting the expenses of drawing. But the defendant could not accept, remove and dispose of the lumber as properly sawed under the contract, and when sued for the price of sawing, insist that it was not done according to the contract. The parties having, by agreement, fixed a mode for settling the damage from bad sawing, cannot resort to any other method.

I think the judgment should be affirmed.

Judgment reversed.