## HARRIS *v.* RATHBUN.

### March, 1866.

A contract to saw logs into specified sizes of lumber, in good and work-
manlike manner, and to take and pay for all that the sawyer spoils in
sawing, requires him to take and pay for only what is rendered un-
marketable.

Spoiled lumber does not include what is merely sawed smaller than
called for by the contract.

Evidence of general usage is admissible, in such a case, to explain the
term " spoiled lumber," if it can be deemed ambiguous.

In an action by a sawyer to recover the contract price agreed to be paid
for sawing lumber in a workmanlike manner, the employer may recoup
damages for unworkmanlike sawing, although he has received the
lumber, if he objected, at the time of receiving it, that the work was
not well done.

Where the performance of work to be done is to precede payment, and is
a condition thereof, the contractor, having substantially failed to per
form on his part, cannot recover for his labor and materials, notwith-
standing the owner has chosen to enjoy the benefit of the work done.[*]

William Harris sued Isaac Rathbun, to recover a balance due
upon a contract.

The plaintiff and defendant were lumbermen; the former en-
gaged in manufacturing, and the latter in furnishing logs to be
manufactured into lumber, and then selling it. In January,
1857, they made a written contract, by which plaintiff was to
saw into lumber for defendant all the logs that the latter should
draw to his mill for one year to come; to saw the same into
such lumber as defendant should from time to time direct;
and, "to saw it in a good, workmanlike manner, and to
take pains and saw all the clear stuff, select box, that can be
got out of the logs, and to saw all the bark from the edge board,
and what is sawed into inch is to be sawed plump inch, and if
said party of the first part [the plaintiff] shall *spoil* any lumber,
he is to take it, and pay the party of the second part [the de-
fendant] what he shall get for the remainder, deducting the
drawing per 1,000 feet therefrom."

---

[*] Compare Walker *v.* Millard, 29 *N. Y.* 375.

A part of the price for sawing was to be paid as the work progressed, and the remainder (for which this action was brought), after the work was finished. The plaintiff sawed, under the contract, all the logs furnished by defendant, into lumber, and the defendant accepted the lumber, drew it away, and sold it.

The referee, whose rulings are sufficiently stated in the opinion of MORGAN, J., reported in favor of plaintiff, and judgment was entered, and affirmed at general term. The defendant appealed.

*D. Rumsey*, for defendant, appellant.

*A. P. Ferris*, for plaintiff, respondent.

MORGAN, J.—The defendant claimed that he was entitled to damages, because the plaintiff had not sawed his lumber in a good and workmanlike manner. The case concedes that the defendant received the lumber without rejecting any part of it, although the contract stipulated that, if the plaintiff spoiled any of the lumber in sawing it, he was to take it and pay for it at a price agreed upon between the parties.

The defendant, however, offered to prove that the lumber was not sawed in a good and workmanlike manner. This offer was objected to on the ground that the contract designated all lumber not sawed in a good and workmanlike manner as spoiled lumber. The referee sustained the objection and excluded the evidence. The defendant then offered to prove that, when he took the lumber away, the parties disagreed in respect to the quality of the sawing, the defendant contending that it was not sawed in a good and workmanlike manner, and the plaintiff insisting that it was. This evidence was overruled. The defendant then proposed to show that, among lumbermen, *spoiled* lumber is that which is rendered unmarketable. This evidence was likewise rejected.

It is argued by the plaintiff's counsel that *spoiled* lumber was defined by the contract to include all such as was not well sawed according to the specifications of the contract. The contract required the plaintiff to " saw it in a good and workman-

like manner, and to take pains and saw all the clean stuff, select box, that could be got out of the logs, and to saw all the bark from the edge board, and what was sawed into inch was to be sawed *plump* inch." It further provided that, if the plaintiff should *spoil* any lumber, he should retain it and allow à specified price. I am unable to appreciate the position taken by the plaintiff, that by the terms of the contract, lumber not sawed according to these specifications was *spoiled* lumber. I should infer, from the known and acknowledged signification of the word, that, by *spoiled* lumber, it was only intended to include such as was rendered unfit for market. I think we may assume that there are different grades of lumber in the market, and that its quality may depend, in a considerable degree, upon the manner in which it is sawed.

The contract plainly implies that certain logs which might be suitable for clear stuff, select box, might be wasted, or sawed into a second or inferior quality of lumber, but which would nevertheless be marketable, and could not by any sensible interpretation of the contract be included among lumber that was spoiled. This was what the defendant proposed to prove by the custom of merchants, but which I think was properly overruled; and I agree with the plaintiff's counsel that the contract was unambiguous, and did not require extraneous evidence to interpret its meaning; while I am clearly of opinion that he is wrong in his interpretation of it.

If, however, the words admit of two interpretations, and if it had acquired a technical meaning among lumbermen when applied to the trade or business of manufacturing logs into lumber, it was competent for the defendant to prove the general custom in order to fix its meaning in the contract. Evidence of general usage in the trade to which the contract refers is admissible to give a particular sense to the words employed, as the parties may be presumed to have contracted in conformity with the custom, and to have used the word in the customary trade acceptation. *Add. on Cont.* 854; Dawson *v.* Kittle, 4 *Hill,* 107.

The offer was not as broad as it should have been, for it did not propose to prove a *general* custom. It does not, however, appear that the offer was overruled for this reason. But it is the business of counsel to make the offer sufficiently broad to

justify the evidence. If the question turned upon this exception, it would, perhaps, be difficult to sustain it, as the offer was not sufficiently comprehensive.

The principal question is, whether the referee erred in overruling the defendant's offer to prove that the lumber was not sawed in a good, workmanlike manner. The offer does not specify wherein the plaintiff failed to comply with the regulations of the contract. I was at first inclined to the opinion that the offer was too general and indefinite to sustain an exception; but as the referee excluded it upon another ground which could not be obviated by making it more specific, I think the exception is sufficient to raise the question.

It will be seen that the defendant was the owner of the logs, and employed the plaintiff to manufacture them into lumber. The law would perhaps imply that he was to do it in a good and workmanlike manner, but the contract goes further, and specifies several particulars as to the manner in which the work was to be done. It is apparent that the parties themselves defined what should be considered good workmanship; and if the offer had not been excluded, it may be presumed that he might have proved some of the allegations contained in his answer; among which is one, " that a large portion of said logs that would have made clear stuff or select box boards, were wasted in the sawing thereof." Another allegation was, that portions were left with the bark on the edge, and a portion intended to be sawed inch stuff was not sawed plump inch, a part thereof being over, and another part less than an inch. It is very probable that these allegations of the answer could not have been sustained by proof to any considerable extent; but I do not think we are at liberty to say that the defendant could not have proved some of them, so as to lay the foundation for damages.

The ground upon which the rejection of this evidence is maintained by the plaintiff is, that the defendant, by receiving the lumber, waived his claim for damages. This ground of objection should be considered in connection with the defendant's offer to show that he objected to the workmanship when he took the lumber. In this view of the case, I think it cannot be said that there was any intention to waive his claim for

damages. The plaintiff's counsel relies upon the authority of Reed v. Randall (29 *N. Y.* 358), and kindred cases. Conceding that case was rightly decided, it does not authorize the application of the doctrine of waiver in a case like this; for here the defendant had no option to refuse any lumber, except such as was spoiled, not such as was sawed into inferior qualities. In executory sales of property, the purchaser is at liberty to reject or to return the article, if it does not answer the contract.

The only doubt I have of the correctness of the principle, decided in Reed v. Randall, is, that it may operate to deprive a purchaser of the benefit of his contract. It requires him to reject the article which may be worth much more to him than he contracted to give for it, or else to lose his claim to damages. But that case cannot be invoked as an authority for refusing damages in a case where one man employs another to saw his lumber or to build him a house. The owner has no right of election in such a case upon which to predicate a waiver of damages for non-performance of the contract according to its terms.

In my opinion the judgment should be reversed, and a new trial granted.

HUNT, J. [After stating the facts]—On the trial, the plaintiff proved that he had sawed for the defendant under the contract, one hundred and sixty-five thousand and ninety to one hundred and eighty-seven thousand feet of lumber. It was admitted that the defendant took possession of the lumber and drew it away from the mill and disposed of it.

The defendant then offered to prove that the lumber was not sawed in a good and workmanlike manner, as required by the contract. This was objected to, on the ground that the contract provides that if the plaintiff spoils any lumber he is to take it and pay the defendant for it; that all lumber not sawed according to the contract is to be deemed spoiled lumber; and that it was the duty of the defendant to have offered it to the plaintiff, and that he should have refused to accept it, before the present defence would be available. The referee so held, and excluded the evidence.

Harris v. Rathbun.

As I construe the contract, it contains distinct clauses on this head. First. That Harris will saw the logs into such lumber as Rathbun shall direct. This I assume to include width and thickness, and it is in legal effect the same as if Rathbun had stipulated in writing that one-third thereof should be ten inches wide and one and a half inches thick, and the residue one-half thereof to be one inch thick; the remaining portion to be three-quarters of an inch thick, or of any other specific dimensions. Second. Harris agrees to saw all this "in a good workmanlike manner;" in other words, the sawing shall be of the smooth and even character belonging to a steam mill, rather than a water mill. The ends shall be perfectly trimmed; the same board shall not be thicker or wider at one end than the other. Third. He agrees to saw all the clear stuff select box, that can be got out of the logs. By clear stuff is supposed to be meant boards having neither knots, decay or shakiness in them; and this he agrees to saw into a character of lumber called select box boards. Fourth. He is to saw all the bark from the edge board, and what is sawed into inch boards is to be plump inch thick. Last. He agrees that if he spoils any lumber, or if he renders it of no value in any form or class, he will keep it, and will pay to Rathbun its value.

The plaintiff in his next objection refused to allow the referee to be informed as to the meaning of the term "spoiled lumber," and this court was thereby also deprived of the light to be afforded by that information. We must, therefore, act upon our own intelligence on the subject.

Lumber is useful, and more or less valuable, in all its conditions, whether in the shape of slabs—its least valuable form of manufacture—or in that of select clear stuff boards, or in the form of square timber. Boards of the thickness of one inch and a quarter, which will make them of one inch thickness when dressed, are more valuable than those of one inch merely, and these again are more valuable than those being merely three-quarters of an inch in thickness. I cannot think, however, that if a board is but three-quarters of an inch in thickness, when with proper care it might have been made an inch thick the board is thereby spoiled. It is certainly spoiled as an inch and a quarter board, but it has a market value as a board of

a less dimension.  A board which is not a plump inch thick is valuable as a board of the next lower degree.  A board that has a wany edge is not a handsome well-dressed article of the highest class, but the passage through it of a circular saw, at a trifling expense, would completely restore it; and I cannot think the bark upon the edge can be said to have spoiled the board.  The butts may not be properly cut off the boards; the sawing may be rough and uneven; the boards may be dirty and weather-stained; they may have bark or wane upon the edges; but they are not thereby rendered valueless.

I think there is in this distinct contract, an agreement by Harris that if he spoils or entirely destroys any of the lumber—renders it of no value in any class or grade—he will keep it and pay its value, and that it also contains in express terms the ordinary agreement to perform his business in a workmanlike manner, for the breach of which he is liable in damages.

In an action now brought by the sawyer to recover the price agreed to be paid for the sawing, the other party having taken away the lumber, objecting, at the time, that it was not sawed in a workmanlike manner, can the objection be made that the work was not well done, and a recoupment of damages be made?

The plaintiff rested his objection upon the specific ground that, if not sawed according to the contract, the lumber was to be deemed spoiled lumber, and to be kept by the plaintiff, and did not object that the lumber had been received by the defendant, and that he was thereby precluded from finding fault with it.  I have endeavored to show the unsoundness of this proposition.

That the defendant did not intend to waive a complete performance, but that when the lumber was removed he complained that the work was not well done, is to be assumed as a fact in determining the present question.  The next offer of the defendant was to show such complaint on his part.

The case comes within Smith *v.* Brady, 17 *N. Y.* 173, which holds that where work is to be done, and performance is to precede payment, and is the condition thereof, the party doing the work having failed substantially to perform on his part can recover nothing for his labor or his materials, notwithstanding

the other party has chosen to occupy and enjoy the erection. See also Ellis *v.* Hamlen, 3 *Taunt.* 52 ; Champlin *v.* Rowley, 13 *Wend.* 258; S. C., 18 *Id.* 187.

The case of Reed *v.* Randall, 29 *N. Y.* 358, was of a different character.[*] That was not a case of work to be done or services rendered, whose performance was to precede payment, but of the sale and delivery of property contracted for at a specified price, received by the vendee without objection, and no complaint made for several months.

I think there should be a new trial.

A majority of the judges concurred.

WRIGHT, J. (dissenting), expressed an opinion to the effect that by the provisions of the contract, the plaintiff was to take and pay for the lumber "*spoiled,*" and all not sawed according to the contract was within that description ; that the defendant could not accept, remove and dispose of the lumber, and afterwards insist that the sawing was not done according to contract, and claim damages on that ground ; as his right to such damages did not survive the acceptance of the lumber by him.

Judgment reversed, and new trial ordered, costs to abide the event.

---

[*] The difference between the members of the court in that case was on the question, to which of two classes of cases the one before the court properly belonged ; whether a sale with express warranty, or an executory contract of sale of goods to be of a specified or merchantable quality, but which on delivery were accompanied by no express warranty. Rust *v.* Eckler, 41 *N. Y.* 488.