WILLIAM W. BOZARTH v. THOMAS H. DUDLEY.

1. A contract for building on land may be abrogated or abandoned, either by the express agreement of the parties or by the implication arising from conduct inconsistent with its being still in force. But mere deviations and changes of plan will not imply abrogation or abandonment when the contract expressly provides that such deviations and changes may be made.

2. When a contract for building on land has not been so performed as to justify a recovery thereon, a recovery in *assumpsit* on the common counts, for the work and materials used in the erection, will only be permitted when the owner has actually accepted the building.

3. Such acceptance may be express or implied from circumstances; mere occupation of the building does not necessarily imply such acceptance.

4. Damages of a defendant cannot be recouped under section 129, (*Practice, Rev.* 868,) unless the notice required has been filed with the plea and the damages arise out of the very contract sued upon.

On rule to show cause why a new trial should not be granted.

Argued at February Term, 1882, before Justices Dixon, Reed and Magie.

For the plaintiff, *R. S. Jenkins.*

For the defendant, *P. L. Voorhees.*

Bozarth v. Dudley.

The opinion of the court was delivered by

MAGIE, J.   This was an action of *assumpsit*, and the dec-
laration contained only the common counts.  A bill of par-
ticulars appended thereto gave notice that the action was
brought to recover a balance of $13,005.74, for "furnishing
labor and materials and erecting a dwelling-house, stable, car-
riage-house and coachman's-house combined, wood-house, gas-
holder," &c.   The charges in the main bill amounted to $35,-
395.92.   Payments of $22,800 were credited, leaving due, as
claimed, $12,595.92.   An account was annexed, called a
"stable account," charging defendant with work and mate-
rials in building a stable, partly under a contract and partly
without.   Credit was given thereon for the whole contract
price, and the amount unpaid, $409.82, added to the amount
claimed in the main bill, made up the total of $13,005.74.

The bill of particulars also included a copy of a contract
between the parties, dated October 12th, 1871, whereby plain-
tiff agreed to erect and complete a dwelling-house for defendant,
according to the specifications annexed thereto, and according
to the shape, style, character and dimensions shown on plans
therein referred to, by the 1st day of September then next,
for the price of $26,880.   This price defendant agreed should
be paid by instalments as the building progressed.   The final
payment of $4880 was to be paid when the building should
be completed to the satisfaction of defendant and accepted by
him after his arrival in this country, not later than October
1st, 1872.

The successive payments were to be made by George W.
Gilbert, as defendant's agent for that purpose, "provided the
work and materials are satisfactory."

It was further provided that detailed and working draw-
ings necessary should be furnished by plaintiff at his own
expense, but they were to be according to the style and char-
acter of the plans and in accordance with the specifications.
This contract was under seal.

The defendant pleaded the general issue, and payment with
notice of set-off.

Upon the trial of the issue in the Camden Circuit, plaintiff proved his books of account containing the items of the bill of particulars, and rested. Defendant then moved for a non-suit, on the ground that said plaintiff having included in the bill of particulars a contract, he was bound to show either a complete performance of its stipulations or that the contract had been abrogated. The plaintiff was permitted to re-open his case and to produce evidence that the contract had been abrogated.

The evidence disclosed that the bill of particulars contained not only charges for extra work on the stable, and charges for work and materials on the dwelling-house, which were required by the contract, but also charges for extra work on the dwelling-house, and for the erection of a tool or wood-house on the same premises on which the dwelling-house was built. As to the contract, plaintiff's testimony was, that after its execution the whole style and character of the proposed building was, by defendant's directions, so altered from that required by the contract, that it no longer remained in force. The contention was that the building, as actually erected, was erected not under the contract, but under an implied undertaking resulting from defendant's orders.

Upon plaintiff's again resting the motion to non-suit was renewed, on the ground of the insufficiency of the evidence. The motion being denied, defendant put the contract in evidence and produced testimony to show that the dwelling-house was built under the contract which had not been abrogated ; that in many material particulars it was not built in accordance with the contract; and that it had never been accepted by him. His contention with respect to so much of plaintiff's claim as related to the dwelling-house, was that nothing could be recovered, because the stipulations of the contract which were to be performed by plaintiff as conditions precedent to the payment of the contract price, had not been performed, and because the contract, being under seal, this action could not be maintained therefor.

Plaintiff's evidence further tended to show that the dwell-

ing-house had been accepted by defendant. Upon this subject it became material to determine whether a Mr. Cooper, upon whose certificates payments had been made by Gilbert, was an agent of defendant in superintending the dwelling-house. Plaintiff claimed that Cooper had been appointed or recognized as such agent, and had not only inspected the work and materials now objected to, without remonstrance or rejection, when removal or alteration could have been easily effected, but had also ordered some of the extra work.

With respect to the extra work on the stable, the contest was whether it had, in fact, been done, and whether it was included within the contract admitted to have been made for building the stable. Defendant further contended that he was entitled in this action to recoup damages sustained by him by reason of plaintiff's defective performance of that contract, which was also under seal.

A verdict for $9163.28 was found in favor of the plaintiff.

Upon this rule to show cause many reasons have been urged, the principal of which relate to the views expressed by the judge on the trial respecting the right of recovery in *assumpsit* upon the evidence, for the work and materials furnished in the erection of the dwelling-house, and which were included in the contract.

The instructions of the judge on this subject were, in substance, that plaintiff might establish his claim in this form of action, either (1) by proof that the contract had been, by the agreement of the parties thereto, so deviated from as to evince that the contract was abrogated or abandoned, and that the work directed by the owner was done under another and implied contract; or (2) by proof that the defendant had, notwithstanding substantial discrepancies between the building as completed and that required by the contract, accepted and retained the same and derived a benefit therefrom.

In presenting the first proposition the jury were carefully directed to the meagre evidence upon the point, and were told that since the contract provided for deviations and changes of plan, they could not properly draw the conclusion that the

contract was abrogated merely from such deviations and changes. I cannot find anything objectionable in these instructions. Any contract may be abrogated or abandoned by the express agreement of the parties who made it. An abandonment may be implied also from the acts of the parties, as, for example, if upon the site upon which a building was to be erected under a written contract, the owner should direct the builder to erect a building entirely variant in character, shape, material and style. But such an inference could not be drawn from deviations from the original plan, permitted by the contract to be made. The question was properly left to the jury, and there is no reason to suppose that, upon the question of fact, their verdict proceeded on this ground. The great weight of evidence was that the contract had never been abandoned.

The second proposition was thus expressed by the trial judge: "Where a defendant has accepted the work and materials furnished by a plaintiff, has taken possession of and derived benefit from such labor and materials, (although there was a special contract), under such circumstances as amount to acceptance, the law implies a promise on part of defendant to pay such remuneration as the benefit conferred on him is reasonably worth; and to recover that *quantum* of remuneration an action of *indebitatus assumpsit* is maintainable. This rule applies to buildings on land of a defendant as well as to mere personalty. The principal question is, if there has been acceptance of the building by a defendant. Mere naked occupation of a building erected on land of owner does not, of itself, waive the special contract, unless the possession be coupled with some act or some language from which acceptance and acquiescence may be reasonably inferred."

It is this part of the charge which is most strongly objected to, and it will be at once perceived that the consideration of the subject brings up several of the vexed questions respecting the rights and liabilities of parties to a contract for the erection of buildings on land. Such a contract deals with a subject matter of a peculiar nature. When an agreement for the manufacture of a chattel out of materials furnished by the

Bozarth v. Dudley.

maker is not performed according to its terms, the remedy of the party for whom it is made seems perfect. And the rejection of the chattel, while completely protecting him, does no injustice to the maker, for it leaves in his hands the materials with which his labor has been united. But when, under a contract for building, labor and materials of the builder are put into an edifice immovably affixed to the lands of another, and the title to which goes with such lands, the right of rejection, while it may be said theoretically to exist, is difficult to enforce in practice, without apparent injustice to one party or the other. If the building be wholly unlike that contracted for, the owner is put to the delay and expense of removing it from his land which it encumbers. If, as is more usual, the building is not so unlike that contracted for as to permit the owner to feel reasonably justified in removing it, or, if he is driven, by necessity, to use the shelter of the building, and if by protest and rejection he may escape payment, yet if the building add anything to the value of the land, eventually he or his representatives become benefited thereby.

These considerations have led to some contrariety of judicial views, as cases with differing circumstances have been presented.

There is a line of cases, of which *Ellis* v. *Hamlen*, decided at Nisi Prius by Chief Justice Sir James Mansfield and reported in 3 *Taunt.* 53, and *Munro* v. *Butt*, 8 *El. & Bl.* 738, in which the judgment of the Queen's Bench was delivered by Lord Campbell, are examples. They hold that when the contract remains open and unperformed, though in slight particulars, no recovery can be had either upon it or upon an implied contract. This line of cases was elaborately reviewed by Judge Comstock in *Smith* v. *Brady*, 17 *N. Y.* 173, and contrasted with cases in the New England states, which seem at variance therewith.

The rigor of this rule has been frequently modified. Thus, we find another line of cases holding that recovery upon such and similar contracts will not be refused for mere technical, inadvertent or unimportant deviations from the terms, but

that whenever there has been a substantial compliance with the contract, recovery may be had thereon, a proper allowance or reduction from the contract price being made for deficiencies. *Glacius* v. *Black*, 50 *N. Y.* 145; 2 *Addison on Cont.*, §§ 864, 865; *Cutler* v. *Close*, 5 *C. & P.* 337; *Dallman* v. *King*, 4 *Bing. N. C.* 105; *Stadhard* v. *Lee*, 3 *B. & S.* 364.

A like variance of judicial view exists in cases where the contract has not been so performed as to justify a recovery thereon even under the modified rule above stated. On examination we shall find two classes of cases permitting a recovery under such circumstances as upon a *quantum meruit.*

One class adopt the view that a recovery should be had in such cases whenever the work and materials are of any value to the owner of the lands to which they have been affixed, and that the proper measure of damages is the contract price, deducting therefrom so much as the house was worth, less on account of variations from the contract. This is the view of the Massachusetts courts, as expressed by Chief Justice Parker in *Hayward* v. *Leonard*, 7 *Pick.* 180; *Smith* v. *First Cong. Ch.*, 8 *Pick.* 178. 'See, also, *Snow* v. *Ware*, 13 *Metc.* 42; *Atkins* v. *Barnstable*, 97 *Mass.* 428; *Fitzgerald* v. *Allen*, 128 *Mass.* 232.

The other class presents the view adopted by the Supreme Court of the United States in *Dermott* v. *Jones*, 2 *Wall.* 1, which holds that while a contractor guilty of fraud or having wilfully abandoned the work unfinished, cannot recover in any form of action, he may recover in *assumpsit* when he has, in good faith, done work which, though not done according to the contract, has been accepted by the owner. In this event it is also held that the recovery is to be founded, as to amount, upon the contract price, making such deductions as required by the contractor's deviations from the contract.

These cases do not differ so much as at first appears. In the Massachusetts cases the conclusion is put upon the ground of a practical acceptance of the building on the part of the owner. Thus, speaking of the distinction between the manufacture of a chattel and the erection of a building, Chief Justice Parker,

in *Hayward* v. *Leonard, supra,* says: " In such case the owner of the land necessarily becomes the owner of the building; * * * though the owner may at first refuse to occupy, he or his heirs or assignees will eventually enjoy the property." He also declares that in cases of a gross and fraudulent violation of the contract, as, for example, where the building is wholly variant from the contract, no recovery can be had except upon an express or implied acceptance. He confines the rule to cases where there has been an honest intention to go by the contract, and a substantive execution of it with deviations comparatively slight.

In each class of cases acceptance is the basis of recovery. One class, however, requires the acceptance to be actual; the other assumes it to exist in all cases when value has been conferred upon the property, and there has been no gross or fraudulent violation of the contract; when such a violation occurs, actual acceptance is necessary to recovery.

We are at liberty to adopt, in this state, whatever rule seems most consonant with reason and principle. There is no adjudicated case presenting the precise question. In *School Trustees* v. *Bennett,* 3 *Dutcher* 513, this court declared the necessity of an entire completion of such a contract as a condition precedent to the right to payment of the contract price, but the action was upon a guaranty for the performance of a contract by a builder, who had, though paid part of the price, wholly failed to complete. In *Haslack* v. *Mayers,* 2 *Dutcher* 284, which was a case involving the entirety of a contract, Potts, J., speaking of building contracts, says: " The principle will be found fully recognized in most of the decisions, that where the contract is entire and there is a failure on one part to perform the service stipulated for, and no express or implied waiver on the other part of the strict letter of the contract, the condition precedent must be substantially performed before a recovery can be had on the common counts." The question was not involved in that case, and the quotation only affords us the view of that acute judge, which would seem to be that a recovery could be had in such case in *assumpsit,*

either upon a substantial performance of the contract or upon an express or implied waiver of its terms.

The rule most agreeable to the principles governing contracts is, it seems to me, this: When a contract for erecting a building has not been so performed that a recovery can be had thereon, a recovery in *assumpsit* upon the common counts for work and materials furnished in the erection, will only be permitted when the owner has actually accepted the building erected.    The view that assumes acceptance from the mere fact that the edifice adds value to the land on which it stands, in my judgment unduly restrains the force of the contract of the parties, and deprives the owner of the right to reject an edifice not in substantial conformity with its terms. If thereby any apparent injustice seems done to the builder in retaining the materials put upon the property, it is the result of his own default, to which he must submit.

Such acceptance by the owner may be express or implied from his conduct.    It seems well settled that mere occupancy of the building by the owner, while appropriate, is neither presumptive nor conclusive evidence of acceptance.    The reason is obvious.    The building belongs to the owner of the land on which it stands.    As was said by Lord Campbell in *Munro* v. *Butt, supra,* the owner cannot be appropriately said to take possession of the building, for he has not been out of possession of that which is thus affixed to his own land.    See cases cited in note to 2 *Addison on Cont.,* § 862; *Corwin* v. *Wallace,* 17 *Iowa* 374; *Reed* v. *Board,* 3 *N. Y.* 104; *Smith* v. *Brady, supra.*

Applying this rule, the charge of the judge was entirely correct on this subject, and the real question in the case was properly submitted to the jury.    There was evidence from which an actual acceptance might be inferred.    I do not think that the evidence of non-acceptance was so preponderating as to require us to disturb the verdict on that ground.

It was further contended that the charge of the judge respecting the question of the agency of Cooper, tended to mislead the jury.    There was contradictory evidence as to his

appointment. There was evidence of his ordering alterations and directing operations about the building. The criticism upon the charge is that this evidence was so put before the jury as to permit them to suppose that the agent's authority might be inferred from his acts. This objection was not made at the time, or, doubtless, the charge would have been so explicit as to have left no ground for criticism. But I think the charge was too clear to have been misunderstood. The jury were told that they were to determine whether or not Cooper " was a self-constituted agent, in which case the defendant would not be bound by his acts or declarations."

The right of recovery having been correctly put upon the ground of defendant's acceptance of the building, the contention that the work was not completed to defendant's satisfaction according to the terms of the contract, becomes of no moment.

Defendant further objects that the court erred in not permitting the jury to consider the question of the damages claimed to be done him by defective work and materials put into the stable under that contract. His insistment was, that although he had paid the contract price in full, the work required by the contract had never been completed, and he claimed the right to recoup the damages thus resulting in this suit. The judge's charge was adverse to defendant's claim on this subject, and, I think, rightly so. Recoupment is permitted solely by force of section 129 of the Practice act. *Rev., p.* 868 ; *Price's Ex'rs* v. *Reynolds,* 10 *Vroom* 171. By the terms of that section it is restricted to damages arising out of the non-performance or defective performance of the same contract which is sued on. A notice of the particulars of such a defence is required to be annexed to the plea and filed therewith. In this case not only was there no such notice, but it was plain that the damages sought to be recouped arose from another contract. The contract sued on was the implied undertaking arising from the furnishing of the extras on the stable. The recoupment claimed was upon the sealed contract.

The remaining question relates to the amount of the ver-

dict. The jury were instructed that a recovery for work and materials included in the contract for the dwelling-house, could not exceed the unpaid balance of the contract price. They were also told that if they believed such work and materials were not in accordance with the requirements of the contract, a deduction should be made in respect thereto from the contract price. No effort was made at the trial to make the instructions more explicit in this respect. No dispute has been made here as to the correctness of the charge. Defendant's claim is that the verdict included the whole balance of the contract price, while he contends that the weight of the evidence requires a large deduction therefrom.

After a careful examination of the evidence, I am satisfied that injustice is done the defendant by the verdict. It has not been easy to ascertain what part of the verdict is due to the claim for so much of the dwelling-house as was included in the contract, but an analysis of the evidence shows that either no deduction from the contract price was made, or, if any, a deduction of less than $300. The evidence clearly shows a much larger reduction should have been made.

There is uncontradicted evidence as to many defects which were wholly or partially concealed in construction, and only brought to light by investigation. This circumstance is not calculated to increase the confidence of the court in regard to defects about which the evidence is contradictory.

To enumerate a few of such defects: No footings were placed under the foundations of this building, though required by the plans; extra timber required by the specifications to be placed under partitions and closets, were omitted; floor joist required to be three by twelve and three by eleven, and bridged in a certain manner, were, in fact, three by eleven and three by ten, respectively, and not bridged as required; ceiling joists or rafters, required to be three by six, were, in fact, composed of inch boards; they were not rendered as required; the valley rafters of the roof, required to be three by twelve, were only three by five, and the ridge pieces, required to be three by twelve, were, in fact, only one-inch boards. The roof is said to be too light for the

weight of slate upon it, and some witnesses declare it unfit for the house. The chimney flues were shown on the plan, but one, at least, was omitted, and all failed to be lined with terra cotta pipe, as required. This list might be greatly extended.

There was also evidence that the heater, which was required to be sufficient to heat certain rooms, was entirely inadequate for the purpose and had to be replaced.

There was also evidence of defects in the slate put on the roof and in the manner in which they were put on. Whether from that cause or from the defective strength of the roof, there is uncontradicted evidence that the roof leaked excessively, and finally had to be removed and replaced.

There is also much evidence that in regard to the quality of the stone in the walls, the manner in which they were laid, the interior plastering, plumbing, flooring and general finish, the house was not what plaintiff agreed to make it.

It is plain to me that a reduction of $300 is entirely inadequate, even under the uncontradicted evidence in the case. By the weight of evidence the deduction ought to be large. But the case has been tried before a referee and then before a jury, and the delay and expense of a new trial ought not to be imposed if justice can now be done. The examination I have given the case convinces me that defendant ought to be further allowed a deduction of $3000, as of the time when the building was to be completed. This amount, with interest during the time included in the verdict, will equal $4790. If plaintiff will remit $4790 of the verdict it may stand for the remainder, and this rule be discharged. Otherwise, the rule must be made absolute.